365 P.2d 1113

David G. SULGER and Mary Elaine Sulger, his wife, Appellants,

v.

Jack MASLIN and Shirley Maslin, his wife, Appellees.

No. 7038.

Supreme Court of Arizona.
En Banc.

Nov. 8, 1961.

W. Shelley Richey, Douglas, for appellants.

Hirsch, Van Slyke & Richter, Tucson, for appellees.

JENNINGS, Justice.

In an action for usury, plaintiffs David G. Sulger and Mary Elaine Sulger, hereinafter called appellants, appeal from that part of the judgment rendered in favor of defendants Jack Maslin and Shirley Maslin, hereinafter called appellees. The case was tried before a court sitting without a jury.

The sum of $100,000 was advanced by appellees to appellants or to the appellants and associates in a series of seven loans or transactions between November 22, 1955 and July 3, 1958. Of this amount $73,000 was advanced on four realty mortgages, $7,000 on two unsecured notes and $20,000 under a transaction wherein appellants sold a realty mortgage to the appellees in return for an option to repurchase the same at specified times for increasing prices of repurchase.

Early in January of 1959 a dispute arose between appellee Jack Maslin and appellant David Sulger concerning the required amount to be paid appellees under the option to repurchase the mortgage. Consequently the suit was precipitated in the trial court which also involved other issues relating to the above-mentioned loans.

We are here concerned with the claimed error of the first, second, and fourth causes before the trial court in which appellants claim (1) that the trial court erred in holding that the appellees did not exact usury from the appellants, and (2) that the trial court erred in entering a judgment for the appellees on the above-numbered causes of action, for the facts, considering them in the light most favorable to the appellees, established every element constituting usury.

The first cause of action involved a note in the sum of $15,000 secured by a realty mortgage and executed by the appellees, together with cotenants having interest in the real property involved. The note provided for interest at the rate of 8% per annum, all of which was duly paid in the sum of $2,243. Simultaneously with the execution of the note and mortgage the appellants and their cotenants entered into an agreement under which they were to pay appellees 10% of the rental income from the property involved under the mortgage during the period covered by the note. The agreement reads in part as follows:

"* * * Whereas, Jack Maslin is interested in the development of said area and has advised the first parties in business matters and counseled with them as to future plans for said properties, and has had considerable experience in the construction of building structures, and has counseled with them with respect to all said properties, and

Whereas, the first parties have full faith and confidence in the abilities of

Maslin and acknowledge that Maslin has given them valuable business advice and has examined the plans for the improvements and has approved said plans,

Now Therefore, It is Agreed that Jack Maslin shall be and hereby is employed to be the exclusive rental agency, solely for the properties * * and the first parties agree to pay him a commission of ten (10%) percent of all rentals of buildings erected on the realty above described, and said employment is to continue uninterrupted for the period of five years from this date. (May 19, 1956) * * *." (insert of date ours.)

Under this agreement the appellees received from appellants and their cotenants the sum of $1,994.60. Appellants contend that the payment of the 10% rental income was received by appellees as consideration of the loan in addition to the 8% interest received in the amount of $2,243, and that the transaction was usurious. We cannot so hold.

 The memorandum rental agreement was a separate instrument which on its face purported to be and was a separate and distinct transaction apart from the execution of the note and mortgage. It is true that the agreement was executed simultaneously with the former but this, without more, does in no way merge the two transactions. The consideration recited in the rental agreement was that Maslin should perform certain services. The agreement itself admits that certain of those services had already been in fact performed. The agreement bespeaks the good faith and confidence between the parties at the time. Testimony of both parties indicates that indeed services were performed. This Court must assume that the trial court was satisfied that the services performed were adequate and commensurate to the rental consideration to be received in return. We cannot carve out a new contract for the parties. It is well settled that this Court will not disturb a judgment on appeal when there is any reasonable evidence to support it. Correspondingly evidence will be viewed in the strongest manner in favor of appellee and in support of the trial court's findings. Sturges v. Tongeland, 83 Ariz. 148, 317 P. 2d 941.

Appellants indicate that since appellee Maslin was not a licensed real estate broker at the inception of the agreement it was unlawful by reason of his violation of A. R.S. Section 32–2154. An examination of this section discloses that it provides for criminal prosecution of those acting as real estate brokers without a license, and this case is not one of a criminal nature. In this instance the appellees, by reason of the agreement, had a perfect right to insist on overseeing both the work of construction and the tenants that would be obtained for the property covered by the mortgage in question.

The judicial definition of usury has been declared on many occasions by this Court. The most recent pronouncement set forth in Britz v. Kinsvater, 87 Ariz. 385, 390, 351 P.2d 986, 989 reaffirmed the prior cases of Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555, and Seargeant v. Smith, 63 Ariz. 466, 468, 163 P.2d 680, to wit:

" 'In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites, is lacking, the transaction is not usurious, although it may bear the outward marks of usury.' "

We find in the record no evidence of unlawful intent. Nor do we glean from the record any evidence of an exaction in excess of what is allowed by law. As the definitional requirements are not met usury was not present in this transaction.

Appellants' second cause of action involved a note payable to the appellees in the sum of $30,000 executed February 21, 1956, bearing interest at the rate of 8% per annum, and secured by a realty mortgage.

Both instruments were executed by appellants and their cotenants in the real property covered by the mortgage. Interest in the amount of $3,795.81 was paid in full.

Appellants contend that as a further consideration for this particular loan, the appellee, Jack Maslin required conveyance by the appellants and their cotenants of a parcel of land presently located in Huachuca City, Arizona, and extending 415 feet along the highway from the north into Fort Huachuca and extending back to a depth of 230 feet. Appellees claim that the two transactions bear no relationship and that appellants were paid the sum of $10 for the land.

There is no question but that usury may be paid and received in property as well as in money. 91 C.J.S. Usury p. 616, Section 36. However, there must be a showing of usury in addition to an allegation of usury.

The land in question was three miles from Fort Huachuca. The fact situation

arose over five years ago. The land was vacant. Although the evidence is conflicting concerning land value, the terrain was rough and it is doubtful that the land could have been put to beneficial use without much leveling and improvement. It is also apparent that appellants' adjoining land was enhanced in value because of appellees' subsequent ($1,500) leveling of the land. The record also indicates that appellants had given away other adjoining land with the express purpose and hope that someone would develop it for them. Then too, the deed to the land in question was dated and signed in April of 1956, more than two months after the appellants had received their mortgage money. In light of this evidence we must concur with the trial court's ruling that the transactions did not smack of usury.

Appellants' fourth cause of action involved a note in the sum of $20,000, bearing 8% interest, secured by a realty mortgage, both of which instruments were executed by the appellants. Interest in the amount of $3,497.68 was paid to appellees. In addition to the interest paid the appellees, appellants paid the loan broker a brokerage fee in the neighborhood of 6% total of which appellees received 1½% or approximately one-fourth of the brokerage commission. Appellees assert that the mortgage was placed by appellants' broker, and that the broker offered appellees the discount which they accepted. Appellants claim that appellees' acceptance of the discount, in addition to the 8% rate of interest, constituted usury.

In support of their argument appellants state as a proposition of law that where a lender *requires* the borrower's loan broker to pay or share with him the commission received by such broker from the borrower, the transaction is usurious if thereby the lender obtains more than lawful interest on the principal sum. As a general proposition of law this statement is true. Nevertheless, there are many refinements of this principle. As stated in 91 C.J.S. Usury p. 624, § 43:

"* * * but that where responsibility for such an exaction cannot be so charged to the creditor, the contract is not affected with usury, however oppressive may be the conduct of the agent. * * *"

The purpose of this general proposition of law is to prevent ingenious methods and arrangements wherein borrowers in dire need of immediate money may be filched of excessive sums under the pretense of incidental expenses. However, as pointed out in the case of Great Southern Life Ins. Co. v. Williams, Tex.Civ.App., 135 S.W.2d 241, 245:

"In order to apply the rule, however, it must be shown that the exactions were made by the lender. Where it is sought to charge the lender with usury

in transactions under which commissions are paid to third persons by borrowers it must be shown that the charge was made or exacted by the lender or that the third person was his agent. * * *"

In the instant case the "1½% discount" was neither exacted by the lender nor was the third person (broker) his agent. The mortgage broker himself testified:

"I told Maslin (appellee) if he would lend the money he could have a 1½ percent discount, and so Maslin took it."

He did not say that Maslin made the 1½% a condition of his loan. If the 1½% had been a condition of the loan we might have a case of usury before us. Such a condition was not exacted by appellees.

In fact, it has been held in numerous cases that payment by the agent of the borrower to the lender of a portion of the agent's commission is not usurious merely from the fact that the lender received that portion as a condition of the loan " * * * where the parties act in good faith without intent to evade the usury law and no additional burden is placed on the borrower by the division of the commission." 105 A.L.R. 790; 52 A.L.R.2d 727.

The cases are also in agreement that where usury has been charged and such usurious charge is purportedly evidenced by a collateral agreement intended as a cloak, the question of intent to charge a higher rate of interest than that allowed by law is a question of fact for the jury or the court sitting as a jury. Porter v. Rott, 116 Okl. 3, 243 P. 160. The trial court in the instant case found no such intent.

The judgment is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.