451 P.2d 905

**W. B. HATTON and Mary L. Hatton, his wife, Appellants,**

v.

**Harry W. GREENBERG, a widower, and Harry W. Greenberg, as Executor of the Estate of Dorothy B. Greenberg, Deceased, an undivided one-half interest; and L/H Enterprises, Inc., a Pennsylvania corporation, an undivided one-half interest, Appellees.**

**No. 1 CA–CIV 607.**

Court of Appeals of Arizona.

March 18, 1969.

Rehearing Denied May 7, 1969.
Review Denied June 10, 1969.
Rehearing Denied May 7, 1969.
See 9 Ariz.App. 508, 454 P.2d 178.

Tanner, Jarvis & Owens, by Robert F. Owens, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson and David L. Haga, Phoenix, for appellees.

CAMERON, Judge.

This is an appeal from a denial of a motion by the defendants, the Hattons, to file an amended answer setting up the defense of usury and from the granting of a motion for summary judgment to the plaintiffs Greenberg, et al.

We are called upon to determine whether the holder of a second mortgage in a mortgage foreclosure action by the first mortgagee may assert as a defense usury on the part of the said first mortgagee.

The facts in this case are somewhat complicated and for the purposes of determining the matter on appeal are as follows.

Berkshire Mortgage Company, not a party to this action, handled the escrow as to the sale of the property and the two mortgages involved. The papers were filed and handled in one single transaction. However, for the purposes of considering the legal rights and positions of the parties the following events may be considered to have been taken in the following order:

1. The Hattons, owners of the property, entered into an agreement for the sale of the property to Commonwealth De-

329

velopment Company under an agreement whereby the sale price was $63,000. Hattons were to receive $9,300 in cash and a mortgage for $53,700.

2. Commonwealth Development Company deeded the property to Contini, Evans, Gardner and Santone, hereafter referred to as Contini, et al. Contini, et al., did not agree to assume the obligation to the Hattons.

3. Plaintiffs, Greenberg and L/H Enterprises, Inc., loaned the amount of $45,950 at 8% interest to Contini, et al., secured by a mortgage on the property in question.

4. The Hattons subordinated their mortgage to the Greenberg, et al., mortgage.

5. Contini, et al., (from the proceeds of the loan from Greenberg, et al.), paid to the Hattons the down payment of $9,300.

6. Commonwealth Development Company paid to Berkshire Mortgage the amount of $3,780 as a fee for locating the mortgage.

7. Contini, et al., paid to Berkshire Mortgage the amount of $5,950 as the fee for locating the mortgage.

8. Berkshire Mortgage Company "kicked back" to Greenberg the amount of $2,975 for one-half of the amount paid by Contini, et al., to Berkshire Mortgage Company.

It is noted that Jack Contini was president of Commonwealth Development Company and was also president of Berkshire Mortgage Company. Both Commonwealth and Berkshire were located at 103 Mayer Building in Phoenix. The amount of $45,950 paid for the mortgage by Greenberg, et al., was in the form of two checks in the amount of $22,975 each. One check came from Greenberg and the other from L/H Enterprises of Pennsylvania. Greenberg's testimony on deposition indicated that he asked L/H Enterprises to "go in with me on the deal". The evidence does not show whether Greenberg shared the $2,975 "kickback" with L/H Enterprises.

At the close of the escrow the parties were in the following positions:

1. Contini, et al., had approximately $30,700 cash and possession of the property with no expenditure of money on their part.

2. Greenberg, et al., had a note secured by a first mortgage on the property in the amount of $45,950 with interest at 8%, the maximum legal rate, plus $2,975 cash.

3. The Hattons had a note secured by second mortgage for $53,700 payable by Commonwealth Development Company, a company not known to be financially responsible.

4. The property which had sold for $63,300 had, therefore, two mortgages for a total of approximately $99,650.

It would appear that Contini, et al., made no payment and in February 1965, Greenberg, et al., brought suit to foreclose alleging the full amount of $45,950 due and owing plus 8% interest for 10 September 1963, the date of the note. After interrogatories and Mr. Greenberg's deposition, Greenberg, et al., moved for summary judgment and the Hattons moved to amend their answer to plead the usury in the Greenberg, et al., note and mortgage. The court denied the Hattons' motion and granted the motion of Greenberg, et al., for summary judgment.

Although the matter comes to us upon a pleading question, that is, whether the motion for summary judgment was properly granted, the basic question before this Court is whether the Hattons, second mortgagees, have a right to raise the issue of usury in a note secured by a first mortgage when the first mortgagees (Greenberg, et al.) sue to foreclose. If the Hattons may so plead, the court improperly denied their motion to amend and improperly granted the motion of Greenberg, et al., for summary judgment. If, on the other hand, the Hattons have no standing to raise this issue the granting of their motion to amend would make no difference and summary judgment was properly granted.

■ Viewing the facts in a light most favorable to the Hattons and most strongly against the person for whom the summary judgment was granted, Mermis v. Weeden & Co., 8 Ariz.App. 166, 444 P.2d 524 (1968), we feel that there was a definite fact question as to whether or not the loan made by Greenberg, et al., to Contini, et al., was usurious. Our statutes read:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than eight dollars on one hundred dollars for one year. Any person contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest." § 44–1202 A.R.S.

We would have no difficulty in finding an issue of material fact as to whether Greenberg, et al., received an amount in excess of 8% and that therefore the loan is usurious. As our Supreme Court has stated: "* * * where a lender *requires* the borrower's loan broker to pay or share with him the commission received by such broker from the borrower, the transaction is usurious if thereby the lender obtains more than lawful interest on the principal sum." Sulger v. Maslin, 90 Ariz. 70, 74, 365 P.2d 1113 (1961).

■■ It is the contention of the appellees, however, that even assuming that this is a usurious loan the Hattons have no standing to urge this defense in the mortgage foreclosure action. It is true that the law in Arizona has long been that the defense of usury is purely personal to the debtor and those in privity with him:

"* * * usury laws are enacted for the protection of needy borrowers against the oppressive exactions of money lenders and the defense of usury is purely personal to the debtor and those in privity with him and they alone may avail themselves of it, or waive it and ratify the contract in which it appears." Collister v. Interstate Fidelity Building and Loan

Ass'n, 44 Ariz. 427, 439, 38 P.2d 626, 631, 98 A.L.R. 1020 (1934).

We believe, however, that the Hattons have a standing to raise the issue of usury in the instant case for two reasons. First, we believe that mortgage foreclosure actions being actions in equity, Arizona Coffee Shops v. Phoenix Downtown Park, Ass'n, 95 Ariz. 98, 387 P.2d 801 (1963), Ticktin v. Western Savings and Loan Ass'n, 8 Ariz. App. 63, 442 P.2d 886 (1968), equity will not suffer, in this case, the innocent debtor to go from the court empty handed. We agree with the following:

"The usual rule contended for by Edwards that usury is only a personal defense not available to a third party not a party to the contract, Collister v. Interstate Fidelity Building and Loan Ass'n of Utah, 44 Ariz. 427, 38 P.2d 626 (1934), is not applicable to this situation because the equities demand that the party making the innocent mistake, the United States, prevail over the knowing wrongdoer, Edwards." United States v. Desert Gold Mining Company, 282 F.Supp. 614, 619 (1968).

We therefore believe that the equities in this case demand that the Hattons be allowed to assert their defense of usury against Greenberg, et al.

But there is a second reason why we believe it was error to deny the Hattons' motion. It is true that generally usury is a personal defense and not available to a third party not a party to the contract or in privity with the borrower. Collister v. Interstate Fidelity Building and Loan Ass'n, supra, 91 C.J.S. Usury § 126, page 714, 91 C.J.S. § 131 Usury page 724, 70 A.L.R.2d 1409.

■ We believe, however, that because of the subordination agreement between the Hattons and Contini, et al., there is privity by contract which will allow the defense of usury to be pleaded by the Hattons.

Although the subordination agreement is not present in the files of the Superior Court or before this Court, the evidence and the briefs indicate there was an agree-

ment between Contini, et al., and the Hattons which subordinated the Hattons' mortgage to the Greenberg, et al., mortgage. There being privity of contract between Contini, et al., and the Hattons in the subordination agreement when Greenberg, et al., elected to reap the benefits of that contract by suing to foreclose the mortgage, now a first mortgage because of the subordination agreement, the Hattons had a standing, as privies of the borrowers, to raise the issue of usury as a defense.

The Hattons also raise the question of the rent received by Greenberg, et al., during the foreclosure action. These funds can be determined by the trial court when the matter is considered on its merits.

The summary judgment is set aside and the matter remanded to the court with directions to grant the motion of the Hattons to amend their answer, and for such other action as is consistent with this opinion.

DONOFRIO, C. J., and STEVENS, J., concur.