478 P.2d 532

Deonarine W. GANGADEAN and Vishnudevi Gangadean, husband and wife, Appellants,

v.

**LEUMI FINANCIAL CORPORATION, Appellee.**

I CA–CIV I168.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 31, 1970.

Appellants in pro. per.

Minkler & Galloway, by John B. Galloway, Phoenix, for appellee.

CAMERON, Judge.

This is an appeal by the defendants, Deonarine and Vishnudevi Gangadean, from the summary judgment granted by the Superior Court of Maricopa County in favor of the appellee, Leumi Financial Corporation.

We are called upon to determine:

1. Whether the loan was usurious, and
2. whether the motion for summary judgment was properly granted.

Viewed most strongly in favor of the Gangadeans and most strongly against the party for whom the summary judgment was granted, Hatton v. Greenberg, 9 Ariz. App. 327, 451 P.2d 905 (1969), the pertinent facts are as follows. Leumi Financial Corporation loaned $35,000 to an Arizona corporation known as DeWan's Beauty Products Co., Inc., of which the Gangadeans are president and secretary. The Gangadeans personally guaranteed this loan, and secured it with a second mortgage on a parcel of real property. The loan agreement provided that interest was to be 12% a year, and the board of directors of DeWan's Beauty Products Co., Inc., passed a resolution approving the transaction and authorizing the officers of the corporation to sign the note and loan agreement. When all but $17,000 of this loan had been paid off, an additional $18,-000 was borrowed or advanced on the same note and mortgage bringing the balance back up to the original $35,000. The note and mortgage provided for renewals and the guaranty stated that the Gangadeans promised to pay "any and all indebtedness, whether due or to become due, now existing or hereafter arising." No new resolution was passed when the loan was extended and no new guaranty or mortgage was executed.

Dr. John S. Kruglick played some part in the transaction, apparently as broker or finder. For his services he was paid out of escrow $3,500 less the closing costs of the loan, so that out of the amount of $35,000 paid into escrow, the appellants re-

ceived $30,064.72, the difference of $1,435.-28 being the taxes due on the property. There is a dispute between the parties as to whether Dr. Kruglick was an agent of the lender, Leumi, or the Gangadeans. The testimony of Dr. Kruglick was to the effect that out of the $3,500 "finder's fee" the amount of $357.25 for closing costs was paid in the escrow and deducted from the amount received from escrow. In addition, Dr. Kruglick testified:

"A  It was stipulated by an agreement between Deonarine Gangadean, Leumi, and myself that out of my fee would come the attorney's fees, the travel expenses of Leumi Corporation to Phoenix to see the property, and the escrow costs.

"Q  These amounts were what?

"A  Approximately $350.00—$545.00 lawyer's fee, $350.00 escrow fee, and whatever it cost to get to New York and Phoenix; I think about $250.00.

"Q  You paid the sum of $545.00 to Mr. Harvey Minkler?

"A  Yes.

"Q  He was the attorney representing Leumi Financial Corporation?

"A  I don't know who he was representing. He did the paper work. There was no other attorney. I think he represented everyone.

"Q  Was he your attorney?

"A  No.

"Q  You don't know whether he was Mr. Gangadean's attorney?

"A  No, I don't.

"Q  Do you know he has represented Leumi Financial Corporation for a number of years?

"A  Yes.

"Q  In addition to the sum of $545.00 you also gave to Mr. Loshak the sum of $250.00?

"A  Approximately.

"Q  What was that for?

"A  Airplane fare to Phoenix and back."

The first mortgage holder began foreclosure proceedings after defendants had fallen behind in payments on the loan. Leumi, the second mortgagor holder, was named in the first mortgage holder's foreclosure, and also began foreclosure proceedings on their second mortgage as cross-plaintiff. Summary judgment was granted in favor of the first mortgage holder. Defendants set up a defense of usury in answer to Leumi's action. Summary judgment was eventually granted in favor of Leumi also. Defendants appeal this summary judgment raising numerous questions. However, we limit ourselves to questions of usury and the granting of the motion for summary judgment.

## WAS THE LOAN USURIOUS?

A.R.S. § 10–177, as it read during 1966 and 1967 when the loans were made, stated:

"Any other provision of law, to the contrary, notwithstanding, any foreign or domestic corporation organized for pecuniary gain may in writing, *pursuant to an authorizing resolution of its board of directors,* agree to pay such rate of interest not exceeding twelve per cent per annum as such corporation may determine on any loan under which the principal balance to be repaid shall originally exceed the sum of three thousand five hundred dollars or on any series of advances of money pursuant to a loan agreement or undertaking if the principal balance to be repaid thereunder shall originally exceed the sum of three thousand five hundred dollars, or on any *extension or renewal thereof,* and as to any such transaction the claim or defense of usury by such corporation or its successor or anyone in its behalf is prohibited * * *." (Emphasis added)

We have no difficulty in holding that as to the original loan the 12% interest was binding upon the borrower as well

as the Gangadeans who guaranteed the loan. Neither do we have any difficulty with the 10% finder's fee paid to Dr. Kruglick, Sulger v. Maslin, 90 Ariz. 70, 365 P.2d 1113 (1961), nor the amount paid out of the finder's fee for closing costs or the expenses of Mr. Loshak. Our Supreme Court has stated:

> " * * * We have repeatedly held that fees charged for services rendered are not interest *if they are reasonable.* Modern Pioneers Ins. Co. v. Nandin, *supra;* Grady v. Price, 94 Ariz. 252, 383 P.2d 173. * * *." Altherr v. Wilshire Mortgage Corporation, 104 Ariz. 59, 63, 448 P.2d 859, 863 (1968).

And:

> "A lender, in addition to the highest rate of interest, may charge the borrower reasonable fees for services rendered in connection with the loan, or require reimbursement of expenses incurred, such as the examination of title, recordation of papers, and perhaps traveling expenses and other similar expenses." Grady v. Price, 94 Ariz. 252, 256, 257, 383 P.2d 173, 176 (1963).

If the borrower may reimburse the lender for such expenses without causing the loan to be usurious a third person may do so, and we do not find that the payments by Dr. Kruglick for the closing costs and to Mr. Loshak, for actual travel expenses, made the loan usurious.

## SUMMARY JUDGMENT

We do have difficulty with two problems which we feel raise sufficient issues of fact so as to make the granting of the motion for summary judgment erroneous.

First, defendants contend that they would be able to establish facts sufficient to deny the granting of summary judgment in favor of the lender if they were given the time to do so. Defendants allege that the trial judge abused his discretion by granting summary judgment at too early a date, thus denying defendants a chance to complete their discovery procedure and establish issues of fact alleged by defendants to exist. 

A brief review of the dates involved is necessary for determination of this issue. Leumi, the lender, filed a cross-complaint against the defendants on 5 July 1968. On 30 December 1968 Leumi moved for summary judgment. The affidavit of Eliot Loshak, vice president of Leumi, in support of Leumi's motion for summary judgment (signed 13 December 1968), alleged that Dr. Kruglick acted for and on behalf of DeWan's Beauty Products Co., Inc., and was not an officer of Leumi and that "no part of the commission paid * * * was received by Leumi Financial Corporation." On 9 January 1969 the defendants noticed the Dr. Kruglick deposition and moved to continue the hearing on the summary judgment until after the deposition. On 16 January 1969 the deposition began but was continued so that Dr. Kruglick could bring additional documents concerning payments by him to Leumi and his alleged agency with Leumi. On 22 January 1969 the subpoena for the Loshak deposition was issued. The memorandum in support of the motion to quash filed 30 January 1969 asserted that Eliot Loshak was no longer employed by Leumi as an officer of the corporation even though the motion for summary judgment signed 13 December 1968 was supported by an affidavit of Eliot Loshak as vice president. On 24 February 1969 the subpoena was quashed by the trial court. Finally, on 21 March 1969 summary judgment was signed in favor of Leumi.

> This Court has stated:

> "The granting of a motion for summary judgment is proper only when there are no issues of material fact. Lawless v. Ennis, 3 Ariz.App. 451, 415 P.2d 465 (1966)." Favour v. Joseff, 5 Ariz.App. 244, 246, 425 P.2d 432, 434 (1967).

The trial judge should not order summary judgment until the opposing party has had time to discover essential facts. Rule 56(f), Rules of Civil Procedure, 16 A.R.S.

> "We agree with appellants that a motion for summary judgment is not a 'trial by

affidavits.' *See* Sarti v. Udall, 91 Ariz. 24, 26, 369 P.2d 92, 93 (1962). Moreover, a summary judgment should be sparingly used when a state of mind is at issue. Reidy v. Almich, 4 Ariz.App. 144, 148, 418 P.2d 390, 394 (1966). Neither the trial judge nor this court may weigh evidence on a motion for summary judgment. Elerick v. H. B. Rocklin Real Estate Investments *supra* [102 Ariz. 78, 425 P.2d 103]." In re Estate of Sherer, 10 Ariz.App. 31, 37, 455 P.2d 480, 486 (1969).

The Gangadeans raise the question of the $545.00 paid by Dr. Kruglick to the attorney for the borrower. The Gangadeans are entitled to know if these fees were for the actual cost of the transaction, in which case they would not cause the loan to be usurious, or whether part of the amount inured to the benefit of the lender apart from the actual expense of the loan, in which case the defense of usury as to the entire loan might well be sustained. We believe that the failure of the trial court under the circumstances to allow further discovery was error.

Secondly, we are faced with the problem of the payment of the amount of $18,000 after the loan had been paid down to about $17,000. The statute authorizes a 12% rate of interest "on any series of advances of money pursuant to a loan agreement * * * or any extension or renewal thereof * * *." From the facts before this Court the additional $18,000 does not appear to be an "extension or renewal thereof," but a new loan. Upon remand further facts will have to be developed before determination of appellants' contention that as to this amount the 12% interest was usurious. We are not asked in this appeal to consider the effect of the loan of the additional $18,000 on the guaranty of the loan or the security thereof.

Reversed and remanded for further proceedings consistent with this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.