## 23399

Frank Joe BAUGHMAN, et al., Appellants v. AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a Corporation, and AT&T Nassau Metals Corporation, a Corporation, Defendants, of whom AT&T Nassau Metals Corporation is Respondent. (and 3 other cases)

(410 S.E. (2d) 537)

Supreme Court

*Sheldon E. Bernstein,* Del Rey Beach, Fla., *Lawrence M. Mann,* Washington, D.C.; and *Frank B. Register, Jr.,* Lexington, *for appellants.*

*Stephen G. Morrison, Richard H. Willis* and *Laura S. Campbell,* Columbia, *for respondent.*

Heard Dec. 14, 1990; Decided May 13, 1991.

Rehearing Denied Dec. 6, 1991.

CHANDLER, Justice:

These actions were originally commenced by 271 plaintiffs claiming personal injury, property damage, and nuisance caused by pollution from a refinery operated by Respondent AT&T Nassau Metals Corporation (Nassau). Presently, 187 plaintiffs (Plaintiffs) remain in the case. They appeal orders granting Nassau's motions for partial summary judgment and denying their motion to set aside prior partial summary judgments.

We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL BACKGROUND

The actions were commenced on July 11, 1985. Simultaneously with service of the Summonses and Complaints, Plaintiffs served interrogatories seeking, among other things, to discover the chemicals emitted from Nassau's plant. Nassau answered and served its first set of interrogatories. Over the next two years more than 300 depositions were taken, including one for almost every plaintiff in the case.

On June 26, 1987, Nassau served its second set of interrogatories. Interrogatory 6 asked for "any medical doctor who has diagnosed any illness or medical condition as being proximately caused by exposure to materials emanating from the Nassau facility. . . ."

Both Plaintiffs and Nassau sought at various times to compel the other to respond or provide more complete answers to various interrogatories.

On July 22, 1987, the trial court ordered Nassau to furnish complete answers to several of Plaintiffs' interrogatories, and ordered Plaintiffs to respond to Nassau's first set of interrogatories, or provide supplemental answers thereto. This was followed by an order, dated September 29, 1987, which required Plaintiffs to answer certain of Nassau's second set of interrogatories, including Interrogatory 6, and required Nassau to provide summaries of information sought by Plaintiffs' interrogatories.

On October 12, 1987, Nassau filed the first of several motions for partial summary judgment, this on the personal injury and property damage claims of a single plaintiff, Harold Ford. Plaintiffs subsequently moved for a protective order "staying all dispositive motions until discovery is completed. . . ." At hearings on these motions, counsel for Plaintiffs conceded that a medical expert who could testify to the necessary degree of medical certainty had not then been obtained, contending additional time was necessary to locate such an expert. Trial court nevertheless granted Nassau's motion on the ground that Ford had made no showing his injuries were proximately caused by Nassau.

On December 8, 1987, Plaintiffs moved to have the grant of partial summary judgment reconsidered. Nassau moved for sanctions due to Plaintiffs' failure to answer the second set of interrogatories as required by the order of September 29,

1987. At the hearing which followed, Plaintiffs' counsel disclosed a recently discovered expert witness, Dr. Elaine Panitz, and submitted a letter from her, dated December 11, 1987, in which she made a preliminary assessment of the case and recommended further study. Counsel took the position that summary judgment was premature until Plaintiffs were "given the opportunity to develop this subject. . . ."

By order dated January 27, 1988, the trial court denied Plaintiffs' motion for reconsideration and for a protective order. It granted Nassau's motion for sanctions, stating:

> It is, therefore, ordered that the plaintiffs shall not be allowed any medical testimony, witnesses, documents or exhibits of any kind required by defendant's second set of interrogatories and not now fully disclosed in their answers to interrogatories or depositions. Plaintiffs are precluded from developing facts in the trial of the case through sources they have failed to reveal heretofore as required by my Order of September 29, 1987. The defendant is entitled to, and has been deprived of, information necessary or at least desirable to its defense, all to its prejudice.

Notwithstanding the foregoing, Nassau took Dr. Panitz's deposition on February 11, 1988. Dr. Panitz testified she had not formed an opinion concerning causation, but she did specify the type of study she thought would be appropriate.

Thereafter, Nassau moved for partial summary judgment on several additional personal injury and property damage claims. At the hearing on this motion, Nassau's counsel asserted that Dr. Panitz's testimony was precluded by the order of January 27, 1988. Counsel for Plaintiffs responded that the order did not apply to witnesses procured in the future. In a subsequent order filed on August 22, 1988, granting Nassau's motion for partial summary judgment, the trial court stated:

> At the hearing a discussion was had relative to the possibility of procuring additional expert medical testimony on behalf of the Plaintiffs from Dr. Elaine Panitz of New Jersey and perhaps others. Any evidence, by deposition or otherwise, inconsistent with my Order of January 27, 1988, need not be pursued and is hereby forbidden.

In the meantime, on July 29, 1988, Nassau served a Request for Admissions upon each of the plaintiffs. Altogether, the requests totalled approximately 900 pages. Many required Plaintiffs to provide certain information in the event the request was denied. Within the time for responding,[1] Plaintiffs filed a motion for protective order, alleging the requests were "so voluminous and so framed that they are clearly unduly burdensome" and contending they were "not in proper form" because their effect was "nothing more than interrogatories (guised as requests for admission) seeking to ascertain knowledge of facts."

At the October 13, 1988, hearing on Plaintiffs' motion for protective order and on a motion later filed by Nassau for partial summary judgment on six more personal injury claims, Nassau served a Supplemental Response to Plaintiffs' Motion for Protective Order. It contended the requests should be deemed admitted for Plaintiffs' failure to respond in a timely manner. Also at that hearing, Plaintiffs' counsel, in response to the summary judgment motion, again asserted that additional time was necessary to develop Dr. Panitz's testimony. By order dated October 28, 1988, the trial court denied Plaintiffs' motion for protective order and, simultaneously, deemed Nassau's requests admitted. It also granted Nassau partial summary judgment on the six personal injury claims.

On October 24, 1988, Plaintiffs served responses to Nassau's requests for admissions. Thereafter, they moved that these responses be accepted and the deemed admissions withdrawn.

Plaintiffs also moved pursuant to Rule 54(b), S.C.R.C.P., to set aside all partial summary judgments which had been granted for lack of medical evidence of permanent injuries. The motion was based upon a notarized letter from Dr. Panitz, dated November 29, 1988, which states in part:

> 3. Review of Dr. Lieberman's medical records on 18 plaintiffs reveals that more than 90% have similar respiratory and neurologic complaints, and more than 80% have similar eye and skin complaints. This constellation of neurologic, respiratory, eye and skin complaints is entirely consistent with chronic exposure to volatile organic compounds (VOC).

---

[1] *See* Rule 36(a), S.C.R.C.P.

4. To investigate the issues of chronic VOC exposure, 15 of the 18 plaintiffs had preliminary serum testing for antibodies to formaldehyde, trimellitic anhydride, and isocyanates. . . . The existence of formaldehyde antibodies in this group of Gaston residents is clear indication of formaldehyde exposure. Some of the residents also have antibody titers to TMA and isocyantes.

4. [sic] In my opinion, there is considerable evidence that the Gaston residents are suffering health effects from chronic exposure to airborne volatiles emitted from uncontrolled burning of plastics by Nassau Metals. This problem may well have originated from the burning of plastic scrap in the blast furnace (1979-1984), before the pyrolysis unit came on line. Unfortunately, any residents sensitized to formaldehyde during that time period may never be able to live in the vicinity of the AT&T plant without reacting to the presumably lower levels of formaldehyde now being emitted.

Plaintiffs also relied on this letter in response to Nassau's motion, then pending, for partial summary judgment on all remaining personal injury and property damage claims.

After a hearing, the trial court denied Plaintiffs' motion to vacate the prior summary judgments, and also their motion to have the deemed admissions withdrawn and the October 24, 1988, responses substituted. Additionally, the court granted Nassau's motion for partial summary judgment on the remaining claims for property damage and personal injury. It rejected Dr. Panitz's letter as being precluded by prior orders filed on January 27 and August 22, 1988, and, alternatively, as failing to meet the "most probably" standard for receiving medical evidence of causation. Finally, the trial court granted partial summary judgment for Nassau on the nuisance claims of four plaintiffs, Floyd and Edna Busbee, and O.M. and Jacqueline Shealy.

## ISSUES

We address the following:

I. Discovery involving interrogatories and requests for admissions; and

II. Grant of summary judgments.

## I. DISCOVERY

### A. Interrogatories

Plaintiffs contend the trial court erred in ruling that Dr. Panitz's testimony was precluded by its prior orders prohibiting the development of evidence unresponsive to Nassau's second set of interrogatories. Alternatively, Plaintiffs contend that, assuming a violation of the discovery orders, the sanction precluding Dr. Panitz's evidence was too severe. We agree.

In determining the sufficiency of responses to interrogatories, each answer must be read in the light of the question asked. 8 Wright & Miller, *Federal Practice and Procedure* § 2177, p. 560 (1970). Absent any specification, the interrogatory should be construed as seeking current information as of the time the question is asked and answered. *Young Spring & Wire Corp. v. American Guarantee & Liability Ins. Co.*, 32 F.R.D. 345 (W.D. Mo. 1963). There is, however, a continuing duty to supplement responses with new information concerning the identity of persons having knowledge of discoverable matters and persons expected to be called as expert witnesses. Rules 33(b) and 26(e)(1), S.C.R.C.P.; *see also Laney v. Hefley*, 262 S.C. 54, 202 S.E. (2d) 12 (1974); *Briggs v. Richardson*, 288 S.C. 537, 343 S.E. (2d) 653 (Ct. App. 1986).

Here, Plaintiffs properly responded to Nassau's Interrogatory 6, which sought information concerning any medical doctor who *has* diagnosed illness or injury caused by materials from Nassau's plant. When Dr. Panitz's identity became known to them, Plaintiffs promptly notified Nassau. Thus, Plaintiffs did not violate the requirements of Rule 33. *See Jackson v. H&S Oil Co.*, 263 S.C. 407, 211 S.E. (2d) 223 (1975).

Nor do we find a violation of the discovery orders of January 27 and August 22, 1988. These orders merely precluded any evidence not responsive to Nassau's second set of interrogatories. As noted above, Plaintiffs' answers were sufficient.

Moreover, even if there were a violation, we agree with Plaintiffs that preclusion of Dr. Panitz's testimony was not an appropriate sanction under Rule 37(b) or (d), S.C.R.C.P. The exclusion of a witness is a sanction which "should never be lightly invoked." *Kirkland v. Peoples Gas*

*Co.,* 269 S.C. 431, 435, 237 S.E. (2d) 772, 774 (1977); *Jackson, supra,* 263 S.C. at 411, 211 S.E. (2d) at 225. Where the effect will be the same as granting judgment by default or dismissal, a preclusion order may be made only if there is some showing of wilful disobedience or gross indifference to the rights of the adverse party. 4A *Moore's Federal Practice* ¶ 37.03 [2.-4], pp. 37-78 to -79 (2d ed. 1990); *Campbell v. Johnson,* 101 F. Supp. 705 (S.D.N.Y. 1951). No such showing has been made, or even alleged, here.

### B. Request For Admissions

Plaintiffs contend their timely motion for a protective order prevented Nassau's requests from being deemed admitted pursuant to Rule 36(a), S.C.R.C.P. In the alternative, Plaintiffs contend the trial court erred in denying their motion to withdraw the deemed admissions and to substitute in their place the responses offered by Plaintiffs on October 24, 1988. Again, we agree.

A motion for protective order may be an appropriate response of a party upon whom a request for admissions is served. 8 Wright & Miller, *supra,* § 2259, p. 726 (1970). When made in good faith, as here,[2] such a motion operates to prevent the matters from being deemed admitted. *Graham v. Three or More Members of Army Reserve Sel. Bd.,* 556 F. Supp. 669 (S.D. Tex. 1983); *In re City of Ridgeland,* 494 So. (2d) 348 (Miss. 1986). Otherwise, requiring a party to answer a request for admissions during the pendency of a motion for protective order "would negate the utility of such a motion. . . ." *St. Regis Paper Co. v. Upgrade Corp.,* 86 F.R.D. 355, 356 (W.D. Mich. 1980).

Furthermore, Plaintiffs should have been permitted to withdraw the deemed admissions and file the responses of October 24, 1988. Rule 36(b), S.C.R.C.P., sets forth the test for withdrawal of an admission and, by implication, the filing of a late response. *See Pleasant Hill Bank v. United States,* 60 F.R.D. 1 (W.D. Mo. 1973). The rule provides:

---

[2] The amount and form of Nassau's requests were arguably oppressive. Additionally, many of the requests called upon Plaintiffs to provide information if denied, an improper use of this device. *See* 8 Wright & Miller, *supra,* § 2253, p. 706 (1970); *Adams v. Orr,* 260 S.C. 92, 194 S.E. (2d) 232 (1973) (purpose of request for admissions).

> [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

In this case, both requirements of the test are satisfied. First, presentation of the merits will be subserved since the admissions, if not dispositive, involve key factual elements of Plaintiffs' causes of action. *See Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192 (D. Conn. 1976); *Pleasant Hill Bank, supra.* Second, since Plaintiffs' responses were filed even before the requests were ordered admitted, Nassau's defense could not possibly have been prejudiced. *See Herrin v. Blackman*, 89 F.R.D. 622 (W.D. Tenn. 1981).

## II. SUMMARY JUDGMENT

### A. Personal Injury Claims

Plaintiffs contend trial court erred in granting partial summary judgment on all remaining personal injury claims and in denying their motion to set aside prior partial summary judgments. They argue, first, that Dr. Panitz's letter of November 29, 1988, in and of itself, was sufficient to overcome summary judgment and, second, that even if not, the grant of summary judgment was premature.

### 1. The Panitz Letter

Having already addressed trial court's ruling that Dr. Panitz's letter was precluded by the discovery orders, we consider its alternative ruling that the letter did not satisfy the legal standard for admissibility of expert medical testimony on the issue of causation.[3]

---

[3] The trial court indicated the letter was defective in form because, although notarized, it was not a *sworn* affidavit. *See Nissho-Iwai American Corp. v. Kline*, 845 F. (2d) 1300 (5th Cir. 1988); *Flowers v. Abex Corp.*, 580 F. Supp. 1230 (N.D. Ill. 1984). We overlook this defect for two reasons. First, Nassau did not raise an objection so that Plaintiffs would have the opportunity to obtain an affidavit which technically complied. *See United States v. Western Elec. Co.*, 337 F. (2d) 568 (9th Cir. 1964). Second, Nassau submitted numerous unsworn letters in support of its motions for partial summary judgment. *See DeCintio v. Westchester County Medical Center*, 821 F. (2d) 111 (2d Cir. 1987).

Rule 56(e), S.C.R.C.P., requires that on motion for summary judgment "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, opinion testimony, including that of an expert, which would be inadmissible if testified to at trial may not properly be set forth in an affidavit. 6-Pt. 2 *Moore's Federal Practice* ¶ 56.22[1], pp. 56-743 to -746 (2d ed. 1988); *see also Merit Motors, Inc. v. Chrysler Corp.*, 569 F. (2d) 666 (D. C. Cir. 1977); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1223 (E.D.N.Y. 1985).

Our cases generally hold that, before expert testimony is admissible upon the question of the causal connection between plaintiff's injuries and the acts of the defendant, the testimony must satisfy the "most probably" rule. *Armstrong v. Weiland*, 267 S.C. 12, 225 S.E. (2d) 851 (1976); *Martin v. Mobley*, 253 S.C. 103, 169 S.E. (2d) 278 (1969); *Gambrell v. Burleson*, 252 S.C. 98, 165 S.E. (2d) 622 (1969). The rule has been succinctly stated as follows:

> It is not sufficient for the expert . . . to testify merely that the ailment might or could have resulted from the alleged cause. He must go further and testify that taking into consideration all the data it is his professional opinion that the result in question most probably came from the cause alleged.

*Eubanks v. Piedmont Natural Gas Co.*, 198 F. Supp. 522, 526-27 (W.D.S.C. 1961).

In determining whether particular evidence meets this test it is not necessary that the expert actually use the words "most probably." *Gamble v. Price*, 289 S.C. 538, 347 S.E. (2d) 131 (Ct. App. 1986). It is sufficient that the testimony is such "as to judicially impress that the opinion . . . represents his professional judgment as to the most likely one among the possible causes. . . ." *Norland v. Washington General Hospital*, 461 F. (2d) 694, 697 (8th Cir. 1972).

Viewed in this light, it cannot be said that Dr. Panitz's letter rises to the "most probably" level. A plain reading of the letter reveals that her opinion is within the realm of *possibility* only, not the required standard of *probability*.

## 2. *Summary Judgment Premature?*

Since it is a drastic remedy, summary judgment "should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." *Watson v. Southern Ry. Co.*, 420 F. Supp. 483, 486 (D.S.C. 1975); *see also Holloman v. McAllister*, 289 S.C. 183, 186, 345 S.E. (2d) 728, 729 (1986) ("an extreme remedy to be cautiously invoked"). This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery. 10A Wright & Miller, *Federal Practice and Procedure* § 2741, p. 543 (1983); 6 *Moore's Federal Practice* ¶ 56.02[6], p. 56-39 (2d ed. 1990); *see, e.g., First Chicago Int'l v. United Exchange Co.*, 836 F. (2d) 1375 (D.C. Cir. 1988); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F. (2d) 230 (2d Cir. 1985); *Tyler v. City of Enterprise*, 521 So. (2d) 951 (Ala. 1988); *Gangadean v. Leumi Fin. Corp.*, 13 Ariz. App. 534, 478 P. (2d) 532 (1970); *Commercial Bank of Kendall v. Heiman*, 322 So. (2d) 564 (Fla. Dist. Ct. App. 1975); *Board of Education v. Van Buren & Firestone, Architects, Inc.*, 165 W. Va. 140, 267 S.E. (2d) 440 (1980); *cf.* Rule 56(f), S.C.R.C.P.[4] Under the circumstances, we agree with Plaintiffs that the grant of partial summary judgment on the personal injury claims was premature.

First, Plaintiffs have demonstrated a likelihood that further discovery will uncover additional evidence relevant to the issue of medical causation and that they are not merely engaged in a "fishing expedition." *Bixler v. J.C. Penney Co.*, 376 N.W. (2d) 209 (Minn. 1985); *cf. Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F. (2d) 1068 (7th Cir. 1978). This fact is confirmed by Dr. Panitz's letter of November 29, 1988, which indicates that Plaintiffs' ill-

---

[4] Rule 56(F) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

Although Plaintiffs did not file an affidavit invoking this provision, other courts have not mandated strict compliance with the technical requirements of Rule 56(f) where, as here, the need for further discovery is otherwise made known to the trial court. *First Chicago Int'l, supra; Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F. (2d) 865 (11th Cir. 1988).

nesses are "entirely consistent" with exposure to toxic substances and that there is "considerable evidence" they were caused by chemicals emitted from Nassau's facility. While, as discussed earlier, the opinion expressed does not reach the degree of certainty necessary to overcome summary judgment, it does highlight the need for further testing and analysis of Plaintiffs' medical conditions.

Second, Plaintiffs were not dilatory in seeking discovery on the issue of causation, but have been reasonably diligent in pursuit of a qualified expert to substantiate their claims. *Bixler, supra; Harrison v. Falcon Products, Inc.*, 103 Nev. 558, 746 P. (2d) 642 (1987); *cf. Sitts v. United States*, 811 F. (2d) 736 (2d Cir. 1987); *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F. (2d) 1017, 1031 (5th Cir. 1983) (listing factors).

We acknowledge that more than three years elapsed between the filing of these actions and the final granting of partial summary judgment as to personal injury. The delays in completing discovery, however, may not fairly be attributed solely to Plaintiffs' inaction. *See George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F. (2d) 551 (2d Cir. 1977). Rather, from the beginning, discovery was dominated by Nassau's demands and Plaintiffs' efforts to respond: the taking of hundreds of depositions, including that of almost every named plaintiff; waves of interrogatories addressed to each plaintiff individually; then, requests for admissions seeking information, in addition to stipulations. Moreover, two years into the litigation, Plaintiffs had not yet received satisfactory responses to their interrogatories regarding the substances emitted from the Nassau plant, information critical to their obtaining expert opinion evidence concerning causation.

Finally, the delay in locating Dr. Panitz is tempered by the complexity of these cases and the hardship encountered in proving causation. Other courts have recognized that proof of causation is especially difficult in actions seeking recovery for prolonged exposure to toxic substances. *Elam v. Alcolac, Inc.*, 765 S.W. (2d) 42, 173-74 (Mo. App. 1988);[5] *Ayers v. Jackson Township*, 106 N.J. 557, 585, 525 A. (2d) 287, 301 (1987). The

---

[5] The *Elam* case, in particular, vividly illustrates the complexity of proving causation in a toxic tort case, the extensive medical testing and analysis which is involved, *id.* at 82, 91-94, and the enormous expense incurred, *id.* at 193-94 & n. 74.

following statement by the Supreme Court of Nebraska concerning the difficulty of obtaining expert witnesses in medical malpractice actions is even more applicable to toxic tort cases:

> [T]he real and obvious obstacle, by the very nature of the case—medical malpractice—was access to and availability of a qualified physician who was ready, willing, and able, in terms of time and temperament, to be a witness or affiant in [the] case. In practicality, the complexities of an action for malpractice and the problems of gaining information and enlisting a reliable expert witness as well as formulating and preparing a malpractice case are myriad and usually major, a situation almost a matter of judicial notice.

*Wachtel v. Beer,* 229 Neb. 392, 403-4, 427 N.W. (2d) 56, 64 (1988).

Plaintiffs acted with due diligence in the procurement of an expert medical witness in this protracted litigation. Now that they have located such an expert in the person of Dr. Panitz, the development of this evidence should not be precipitously terminated by summary judgment. Accordingly, entry of all partial summary judgments on claims for personal injury is reversed. Of course, Nassau may renew its motions once Plaintiffs have been afforded an adequate opportunity to complete discovery on the issue of medical causation.[6]

### B. Property Damage Claims

Plaintiffs challenge, on the merits, entry of partial summary judgment on their claims for property damage. Trial court granted Nassau's motions on the ground that Plaintiffs presented no evidence that any alleged property damage was proximately caused by the operation of the Nassau facility.

In reviewing the grant of a summary judgment motion, we apply the same standard which governs the trial court under Rule 56(c), S.C.R.C.P.: summary judgment is proper when "there is no genuine issue as to any material fact and . . . the

---

[6] On remand, it may be advisable for the trial court to impose reasonable limitations upon the discovery, such as by establishing a cut-off date, while according it priority over other matters. *See Manual for Complex Litigation, Second* § 21.421 (1985).

moving party is entitled to judgment as a matter of law." *See* 10 Wright & Miller, *Federal Practice and Procedure* § 2716, p. 643 (1983); *SSI Medical Services, Inc. v. Cox,* — S.C. —, 392 S.E. (2d) 789 (1990); *Irby v. Richardson,* 278 S.C. 484, 298 S.E. (2d) 452 (1982). This standard "mirrors" the standard for a directed verdict under Rule 50(a), S.C.R.C.P. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. (2d) 202, 213 (1986); *see also Main v. Corley,* 281 S.C. 525, 316 S.E. (2d) 406 (1984).

Under Rule 56(c), the party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. (2d) 265 (1986); *see also Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* — S.C. —, 392 S.E. (2d) 460 (1990). With respect to an issue upon which the nonmoving party bears the burden of proof, this initial responsibility "may be discharged by 'showing'— that is, pointing out to the [trial] court—that there is an absence of evidence to support the nonmoving party's case." *Celotex* 477 U.S. at 325, 106 S. Ct. at 2554, 91 L. Ed. (2d) at 275. The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S. Ct. at 2553, 91 L. Ed. (2d) at 274. (Emphasis in original.)

Once moving party carries its initial burden, opposing party must, under Rule 56(e), "do more than simply show that there is some metaphysical doubt as to the material facts" but "must come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. (2d) 538, 552 (1986) (emphasis in original). Indeed, Rule 56(e) specifically prohibits the nonmoving party from resting upon the mere allegations or denials of its pleadings. *See SSI Medical Services, supra; Moody v. McLellan,* 295 S.C. 157, 367 S.E. (2d) 449 (Ct. App. 1988).

In determining whether summary judgment is appropriate, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party. *SSI Medical Services, supra; Standard Fire, supra.* The court then applies the standard set out in Rule 56(c):

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex* 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. (2d) at 273.

Plaintiffs do not take issue with the trial court's conclusion that Nassau met its burden under Rule 56(c). Rather, they contend that evidence contained in answers to interrogatories and depositions was sufficient to create a genuine issue of fact concerning property damage. We disagree.

In *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E. (2d) 438 (1971), this Court upheld the granting of an involuntary nonsuit at the close of plaintiff's case[7] where plaintiff had failed to present evidence of any physical damage to his property. We stated:

While proof, with mathematical certainty, of the amount of loss or damage is not required, in order for damages to be recoverable the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation. See *Piggy Park Enterprises, Inc. v. Schofield*, 251 S.C. 385, 162 S.E. (2d) 705, [(1968)] and cases therein cited.

The evidence as to the diminution of market value is, in

---

[7] Under present procedure, this is a motion for directed verdict. Rule 50(a), S.C.R.C.P.

our view, speculative, not only as to the amount but speculative as to the portion thereof proximately and directly resulting from the one delict on the part of the respondents complained of and proved. Accordingly, such evidence was of no real probative value in ascertaining the amount of any actual damage to the market value of appellant's property resulting from respondent's single wrongful act.

*Id.* 256 S.C. at 570-71, 183 S.E. (2d) at 444.

Plaintiffs' case suffers from a similar deficiency. Although many individual plaintiffs asserted in their answers to interrogatories and depositions that pollution from Nassau's plant had caused a diminution in the value of their property, these "bald allegations" are insufficient to create a genuine issue of fact. *See Stevens v. Barnard,* 512 F. (2d) 876, 879 (10th Cir. 1975). There is a total absence of any competent evidence showing either the existence or the amount of damage to property, or that any such damage was proximately caused by the acts of Nassau. Accordingly, we affirm trial court's grant of partial summary judgment on Plaintiffs' claims for property damage.

## C. Nuisance Claims

Finally, Plaintiffs contend the trial court erred in granting Nassau's motion for partial summary judgment on the nuisance claims of Floyd and Edna Busbee, and O.J. and Jacqueline Shealy. They argue summary judgment was premature before completion of discovery. This argument comes too late.

Unlike with their personal injury claims, Plaintiffs at no time asserted to the trial court that outstanding discovery should preclude summary judgment on these nuisance claims. "Generally, a contention of the opposing party that he was not given sufficient time to present matter in opposition cannot be successfully made for the first time on appeal." 6-Pt. 2 *Moore's Federal Practice* § 56.24, pp. 56-820 to -821 (2d ed. 1988). Having not been raised to the trial court, this issue is not preserved for appellate review. *See* West's S.C. Digest *Appeal & Error,* Key No. 169.

## CONCLUSION

The grant of partial summary judgments on Plaintiffs' property damage claims and the four nuisance claims is affirmed. The partial summary judgments on all claims for personal injury are reversed and the matter remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

HARWELL, Acting C.J., and FINNEY and TOAL, JJ., JAMES E. MOORE, Acting Associate J., concur.