570 S.E.2d 197

**TOMMY L. GRIFFIN PLUMBING
& HEATING CO., Appellant,**

v.

**JORDAN, JONES & GOULDING, INC., Respondent.**

No. 3527.

Court of Appeals of South Carolina.

Heard May 7, 2002.

Decided June 27, 2002.

Rehearing Denied Aug. 22, 2002.

---

460

Marvin D. Infinger, of Haynsworth, Sinkler & Boyd, of Charleston; and David B. Ratterman and Joseph L. Hardesty, both of Stites & Harbison, of Louisville, KY, for appellant.

George D. Wenick, of Smith, Currie & Hancock, of Atlanta, GA; and Edward D. Buckley, Jr. and Stephen L. Brown, both of Young, Clement, Rivers & Tisdale, of Charleston, for respondent.

CURETON, J.:

Tommy L. Griffin Plumbing and Heating Co. (Griffin) brought this action seeking to recover money damages from Jordan, Jones & Goulding, Inc. (JJ & G) for professional negligence and breach of implied warranty. The circuit court granted JJ & G's motion for summary judgment. Griffin appeals. We affirm.

## FACTS AND PROCEDURAL HISTORY

This case has a long and involved procedural history. In the spring of 1987, Griffin entered into a contract with the Commissioners of Public Works for the City of Charleston (CPW) to construct the second phase of the Peninsula Water Trunk Main project (PEN II). CPW hired JJ & G to serve as the design engineer for the project and to administer and supervise the PEN II contract between Griffin and CPW. In

1992, Griffin filed a complaint alleging it was damaged by JJ & G's actions relating to its administration of the contract and sought to recover damages from JJ & G under several different causes of action. JJ & G moved for summary judgment on all of Griffin's causes of action. The circuit court granted JJ & G's summary judgment motion and Griffin appealed to the supreme court which reinstated two of Griffin's causes of actions: malpractice based on professional negligence, and breach of implied warranty. *Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding,* 320 S.C. 49, 57, 463 S.E.2d 85, 89 (1995).

Griffin filed its second amended complaint on June 20, 1996, and a third amended complaint on April 21, 1998. Griffin's third amended complaint alleged it was entitled to recover damages based upon JJ & G's negligence in the supervision, design, and administration of the contract and/or from a breach of implied warranty to provide suitable design plans. Griffin stated nine instances where JJ & G harmed it. JJ & G moved for summary judgment on seven of the nine claims. The circuit court granted JJ & G's motion for partial summary judgment on August 17, 1999.

Griffin's seven claims, dismissed pursuant to JJ & G's summary judgment motion, are as follows: (1) damages based on JJ & G's interference with Griffin's ability to bid on future projects resulting from a derogatory letter JJ & G mailed to Griffin's bonding company, which allegedly resulted in a restriction of Griffin's bonding capability; (2) costs incurred due to a negligent design that failed to show a conflict with an existing sewer line at the McMillan Avenue Tunnel, which caused a delay in redesigning plans, resulting in additional dewatering costs; (3) damages due to the delayed awarding of the contract to Griffin, because of JJ & G's failure to become aware of an asbestos fill in the water tunnels at the Fiddler Creek crossing; (4) costs incurred by Griffin because JJ & G took one year to redesign around the asbestos fill area at Fiddler Creek Crossing; (5) costs incurred when JJ & G required incremental pipe testing, instead of testing the entire pipeline at one time; (6) costs incurred when JJ & G stopped Griffin from working for thirty-four days due to safety concerns at the St. Johns Avenue site; and (7) damages incurred in consultant costs because Griffin was required to get assis-

tance in the collection of funds from CPW because of delays caused, and unsuitable design plans submitted, by JJ & G.

The circuit court denied Griffin's motion for reconsideration on March 28, 2000. The two parties entered into a consent order disposing of the two remaining claims on May 30, 2000. Griffin appeals the circuit court's grant of partial summary judgment.

## LAW/ANALYSIS

### I. Timeliness of Appeal

JJ & G contends Griffin's appeal should be dismissed because the notice of appeal was untimely served. We disagree.

Griffin's complaint alleged nine causes of actions against JJ & G. JJ & G moved for summary judgment on seven of the nine claims. After a hearing, the trial court granted JJ & G's motion for partial summary judgment. The order states, in part:

THEREFORE, the Motion for Partial Summary Judgment of Defendant Jordan, Jones & Goulding, Inc. as to the seven enumerated claims is hereby GRANTED. The Court finds that there is no just reason for delay, and directs entry of judgment as to Plaintiff's seven claims, identified above.

Griffin's motion for reconsideration was denied and Griffin did not immediately appeal. Several months later, after the remaining two claims were dismissed without prejudice, Griffin served a notice of appeal challenging the partial summary judgment order.

JJ & G argues the appeal should be dismissed because the trial court essentially certified the order pursuant to Rule 54(b), SCRCP, and Griffin did not timely serve a notice of appeal pursuant to Rule 203(b)(1), SCACR. JJ & G cites federal law interpreting the federal counterpart to Rule 54, and *Link v. School District of Pickens County*, 302 S.C. 1, 393 S.E.2d 176 (1990) in support of its position.

Griffin argues JJ & G did not move for certification under Rule 54(b), and the trial court's order does not cite the rule. Griffin also contends even if the language in the order consti-

tutes certification under Rule 54(b), the appeal is timely pursuant to S.C.Code Ann. § 14–3–330 (1976).

Rule 54(b), SCRCP, provides:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... however designated, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims or parties, and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

An appeal following a Rule 54(b) certification is the exception rather than the rule. 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* 2654 (3d ed.1998). The rule does not require certification and if the trial court chooses to certify the judgment, it must do so in a definite, unmistakable manner. *Id.*

A certification under the federal rule, Rule 54(b), FRCP, which is virtually identical to our rule, must satisfy three prerequisites for the appellate court to obtain jurisdiction prior to adjudication of all claims in the action. There must be multiple claims for relief or multiple parties; the judgment entered on the certified claim must be a final judgment; and the district court must expressly determine that there is no just reason for delay. Wright, Miller & Kane, *Federal Practice and Procedure* at § 2656. A federal appellate court reviews the first two prerequisites using a de novo standard, but reviews the determination regarding no just reason for delay using an abuse of discretion standard. *Stearns v. Consol. Mgmt., Inc.,* 747 F.2d 1105, 1108 (7th Cir.1984).

■ The federal courts define multiple claims as separate claims with a view to avoiding double appellate review of the same issues. *Fed. Deposit Ins. Corp. v. Elefant,* 790 F.2d 661, 664 (7th Cir.1986). In determining whether a claim is separate, the court must consider whether separate recovery is possible on the claims; mere variations of legal theories do not

constitute separate claims. *Stearns,* 747 F.2d at 1108–09. Where there is a substantial factual overlap between the claim adjudged and the remaining claims, to take jurisdiction would vitiate "the most important purpose behind Rule 54(b)'s limitations—to spare the court of appeals from relearning the facts of a case on successive appeals." *Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 702 (7th Cir.1984). Because the adjudged claim must be separate and unrelated to the remaining claims, Rule 54(b) does not represent a departure from the fundamental principle limiting piecemeal appeals. Wright, Miller & Kane, *Federal Practice and Procedure* at § 2654.

■ Nor does Rule 54(b) alter the definition of a final judgment for purposes of appellate jurisdiction. *Id.* at §§ 2653, 2656. Under the South Carolina Constitution, appellate jurisdiction is to be established by such regulations as the General Assembly may prescribe. S.C. Const. art. V, § 5. The General Assembly has prescribed such regulations through the enactment of S.C.Code Ann. § 14–3–330 (1976 & Supp. 2001). *See generally* Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 89–95 (S.C. Bar 1999); *Jefferson v. Gene's Used Cars, Inc.,* 295 S.C. 317, 317, 368 S.E.2d 456, 456 (1988) (holding the right to appeal is controlled by statute). Section 14–3–330 provides in part:

> The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:
>
> (1) Any intermediate judgment, order or decree in a law case involving the merits ... and final judgments in such actions; *provided,* that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from....

S.C.Code Ann. § 14–3–330(1) (1976 & Supp.2001). If a judgment leaves some further act to be done by the court before the rights of the parties are determined, the judgment is not final. *Mid–State Distribs. v. Century Importers,* 310 S.C. 330, 335, 426 S.E.2d 777, 780 (1993).

In *Link v. School District of Pickens County*, our supreme court held that under § 14–3–330(1), when a party timely files a notice of intent to appeal from a judgment, the appellate court may review any intermediate order necessarily affecting the judgment not earlier appealed. 302 S.C. 1, 6, 393 S.E.2d 176, 179 (1990) (finding the failure to immediately appeal the grant of partial summary judgment was not fatal as a party was entitled under § 14–3–330(1) to wait until final judgment to appeal an intermediate order). The court noted an order which is immediately appealable is not rendered unappealable because it has not been certified under Rule 54(b). *Link*, 302 S.C. at 4, 393 S.E.2d at 177.

The partial summary judgment order in *Link* was not certified pursuant to Rule 54(b). The court noted, however, that federal Rule 54(b) is not construed to alter federal appellate jurisdiction. *Id.* at 4–5, 393 S.E.2d at 178. *See also* Rule 82(a), SCRCP (stating the rules of civil procedure should not be construed to extend or limit the jurisdiction of any court of this state).

In a footnote in *Link*, the court acknowledged it has not addressed the effect of granting a Rule 54(b) certification on appealability. *Link* at 5 n. 3, 393 S.E.2d at 178 n. 3. The court explained: "Rule 54(b) certification purports to alter the definition of 'final judgment' by allowing a final judgment to be entered on certain claims before disposition of the entire case." *Id.* The court then cautioned: "Until this Court determines whether granting certification mandates an immediate appeal, the safer course is to immediately appeal any order certified under Rule 54(b)." *Id.*

▮▮▮ After a trial court determines there are multiple claims or parties, and has directed judgment as to a claim, it must expressly determine there is no just reason for delay. Wright, Miller & Kane, *Federal Practice and Procedure* at § 2659. Although the appellate court reviews the trial court's decision with deference, the trial court's order is subject to reversal for an abuse of discretion. *Id.* The reviewing court "necessarily accord[s] the [trial] court less deference ... when ... the court offers no rationale for its decision to certify." *Fox v. Baltimore City Police Dep't*, 201 F.3d 526, 531 (4th

Cir.2000). In *Braswell Shipyards v. Beazer East,* the Fourth Circuit Court of Appeals stated in part:

> Where the district court is persuaded that Rule 54(b) certification is appropriate, the district court should state those findings on the record or in its order. The expression of clear and cogent findings of fact is crucial. In fact, numerous courts have held that where the district court's Rule 54(b) certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified.

2 F.3d 1331, 1336 (4th Cir.1993) (internal citations omitted).

In this case, we find the circuit court abused its discretion in certifying the partial summary judgment. The language in the order purporting to certify the partial summary judgment was not in response to a motion by either party. The circuit court did not cite Rule 54(b), and failed to make any findings in support of certification.

We find further support for our conclusion the circuit court erred in certifying the partial summary judgment as we find substantial factual overlap between the two remaining claims and the seven adjudicated claims. A number of the claims, including the two remaining claims, alleged JJ & G knew of existing conditions and knowingly interpreted the contract to frustrate Griffin, thereby breaching duties of professional responsibilities owed to Griffin. Most of the claims, including the two remaining claims, arose from continuous problems in the interaction between Griffin & JJ & G under the PEN II project. Accordingly, we find the adjudicated claims were not sufficiently separate to warrant certification under Rule 54(b).

As we find the circuit court erred in certifying the partial summary judgment without making findings, we need not address the remaining prerequisite of Rule 54(b) certification. Accordingly, we find the order on appeal was timely appealed.

## II. Summary judgment motion on Griffin's PEN II claims

Griffin contends the circuit court erred when it granted JJ & G's summary judgment motion on its PEN II claims and Griffin advances three arguments in support of its contention. First, Griffin argues JJ & G failed to meet its initial burden as

the moving party. Second, Griffin contends its PEN II claims were within the fact finder's common knowledge, and therefore, expert testimony was not required to prove the claims. Third, Griffin asserts that even if expert testimony was required, expert affidavits and the equivalent of expert affidavits were in the record and created a genuine issue of material fact, precluding a grant of summary judgment.

Summary judgment is proper only when it is clear that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994). In determining whether any triable issue of fact exists, the evidence and inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *McNair v. Rainsford*, 330 S.C. 332, 341, 499 S.E.2d 488, 493 (Ct.App.1998). In *Baughman v. AT & T*, 306 S.C. 101, 410 S.E.2d 537 (1991), the supreme court discussed the moving party's burden to support a summary judgment motion:

Under Rule 56(c), the party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine issue of material fact. With respect to an issue upon which the nonmoving party bears the burden of proof, this initial responsibility "may be discharged by 'showing'—that is, pointing out to the [trial] court—that there is an absence of evidence to support the nonmoving party's case." The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim."

*Id.* at 115, 410 S.E.2d at 545 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once a moving party sustains its initial burden, the opposing party cannot rest upon the allegations made in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Midland Mut. Life Ins. Co. v. Harrell*, 331 S.C. 394, 397–98, 503 S.E.2d 189, 190–91 (Ct.App.1998).

Griffin initially contends JJ & G's affidavits in support of its summary judgment motion were legally insufficient to sustain JJ & G's burden as the party moving for summary judgment. Griffin argues that JJ & G's affidavits contained

conclusory, non-probative statements, which inadequately addressed deficiencies in JJ & G's plans and specifications for, and administration and supervision of, the PEN II project. We disagree.

JJ & G, as the moving party, who in the posture of this case does not have the burden of proof, was not required to present affidavits to negate Griffin's claims. JJ & G can sustain its burden by simply pointing to the lack of evidence presented by Griffin to support its case. *Baughman*, 306 S.C. at 115, 410 S.E.2d at 545. JJ & G's motion and affidavit adequately pointed out the absence of evidence in the record to support Griffin's claims, and therefore met its burden as the moving party. *Humana Hosp.-Bayside v. Lightle*, 305 S.C. 214, 216, 407 S.E.2d 637, 638 (1991) ("Where a plaintiff relies solely upon the pleadings, files no counter-affidavits, and makes no factual showing in opposition to a motion for summary judgment, the lower court is required under Rule 56, to grant summary judgment, if, under the facts presented by the defendant, he was entitled to judgment as a matter of law.").

Griffin also contends he met the proof requirements by filing a verified complaint. The facts contained in a verified complaint operate as a substitute for an opposing affidavit for summary judgment when the facts contained in the verified complaint are based on personal knowledge. *Dawkins v. Fields*, 345 S.C. 23, 30, 545 S.E.2d 515, 519 (Ct.App.2001). The record reflects Griffin filed its initial verified complaint on September 2, 1992. Griffin then filed an amended verified complaint on October 15, 1992. After the supreme court allowed Griffin to proceed with the two causes of action currently before this court, Griffin filed its second amended complaint on June 20, 1996. The second amended complaint was not a verified complaint, nor did it incorporate by reference the earlier verified complaints. Griffin filed its third amended complaint on March 31, 1998. The third amended complaint also was not verified, and although it incorporated the facts of the second amended complaint, it did not incorporate the earlier verified complaints. Therefore, Griffin's argument that its complaint constituted an affidavit in opposition to JJ & G's motion for summary judgment is without merit.

Griffin next contends the circuit court erred in finding that expert testimony was required to establish the breaches outlined in its complaint. Griffin argues that several of its claims fit into the exception to the requirement for expert testimony, as they raise issues within the common knowledge or experience of the jury.

In South Carolina, a plaintiff in a professional malpractice action is required to introduce expert testimony to establish the defendant's standard of care. However, where the subject matter is of common knowledge or experience so that no special training is required to evaluate the defendant's conduct, expert testimony is not required. *Smith v. Haynsworth, Marion, McKay, & Geurard,* 322 S.C. 433, 435, 472 S.E.2d 612, 613 (1996) (stating that expert witness testimony is generally required to establish the standard of care in legal malpractice cases); *see Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 254, 487 S.E.2d 596, 599 (1997) (stating that unless the subject is a matter of common knowledge, expert witness testimony is required to establish both the standard of care and defendant's failure to conform to the standard in medical malpractice cases).

In *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990), Gilliland, an architect, sued Elmwood Properties for breach of contract to recover monies due under a construction contract. Elmwood Properties filed a counterclaim against Gilliland asserting that Gilliland was professionally negligent by failing to design the project in such a way to fulfill the terms of the contract. The supreme court stated:

The well known rule still exists that generally, in a malpractice case, "there can be no finding of negligence in the absence of expert testimony to support it." The claimant in a malpractice claim must, through expert testimony, establish both the standard of care and the deviation by the defendant from such standard. Here, Elmwood presented no evidence from an expert that Gilliland had committed malpractice. Thus, summary judgment was, in this respect, proper.

*Id.* at 300–01, 391 S.E.2d at 580 (citations omitted).

The same rule exists for breach of implied warranty as for negligent design claims. *Cf. Republic Contracting*

*Corp. v. S.C. Dep't of Highways & Pub. Transp.*, 332 S.C. 197, 209, 503 S.E.2d 761, 767 (Ct.App.1998). Thus, both the professional negligence and breach of implied warranty claims require Griffin to present expert testimony to establish the standard of care, and JJ & G's deviation from the standard of care, unless proof of the claims fall within the common knowledge exception.

In this case, Griffin failed to timely present expert affidavits or other sworn-to pleadings in support of its response to JJ & G's motion for partial summary judgment. The trial court found Griffin also failed to properly move, pursuant to Rule 56(f), SCRCP, for additional time to supply affidavits. Consequently, there is no expert witness testimony in the record. Therefore, Griffin's PEN II claims must fall within the common knowledge exception in order to overcome the failure to provide affidavits or testimony from an expert. We now examine those claims individually.

## A. Griffin's Claims

### *McMillan Avenue Tunnel/Fiddler Creek Crossing*

Griffin argues it was injured by JJ & G's original design plan, which instructed Griffin to build a pipeline through an asbestos fill area, and to place a water pipeline in a location where sewer lines already existed, and Griffin additionally contends it was harmed by JJ & G's delays in providing it with redesigned plans for these areas.[1]

JJ & G argues it relied upon soil sample reports provided by CPW to design the plans for the Fiddler Creek Crossing site and the reports did not indicate the presence of asbestos. Additionally, JJ & G argues it relied upon utility studies conducted by CPW when it created the design for placement of the water pipeline, and the CPW studies did not show an existing sewer line. JJ & G contends that it had no duty to survey the underground utilities, as the PEN II contract

---

1. Griffin also claims JJ & G negligently misrepresented when it received a building permit for the area. We need not address Griffin's negligent misrepresentation claim. Any claim based upon negligent misrepresentation against JJ & G was barred by the supreme court's decision in *Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding*, 320 S.C. 49, 57, 463 S.E.2d 85, 89 (1995).

specifically states that the owner supplied the utility locations and that the "drawings indicate underground utilities or obstructions that are known to exist according to the best information available to the owner."

Regardless of JJ & G's duty to investigate the information furnished it by CPW, we find that under the circumstances of this case, expert testimony was required to establish the standard of care and a breach of that standard by JJ & G. Without expert testimony, a jury cannot determine whether JJ & G was negligent when it relied on CPW's studies in designing the project, because there is no way for a jury to compare JJ & G's actions with the actions other similarly situated engineering firms would have taken when confronted with the situation JJ & G faced. As to Griffin's claim for damages based on the length of time taken to redesign the plans, we again find that expert testimony is needed to evaluate what period of time is reasonable for the redesign of the plans.

### Pipe Testing Requirement

Griffin argues it was damaged when JJ & G required it to test the pipeline from valve to valve, rather than testing the entire pipeline at one time after it was completed. The contract between Griffin and CPW instructed Griffin, "[w]hen a length of pipe approved by the Engineer is ready for testing, fill the line with water, bleed out all of the air and make a leakage test." The contract also provided that Griffin comply with the testing requirements of the American Water Works Association. The Association guidelines provide, "[a]fter the pipe has been laid, all newly laid pipe, or any valved section thereof shall be subjected to a hydrostatic pressure of at least 1.5 times the working pressure at the point of testing." Griffin argues these provisions are ambiguous, and are therefore for the trier of fact to determine if JJ & G erred by requiring the testing from valve to valve. We disagree.

We find as a matter of law the contract provisions are unambiguous. Inasmuch as the construction of the subject contract can be determined by consideration of the plain and unambiguous language of the contract, it becomes a question of law to be resolved by the court and is thus no bar to the grant of summary judgment. *See Lyles v. BMI, Inc.*, 292 S.C.

153, 157, 355 S.E.2d 282, 284 (Ct.App.1987) (finding where a question as to the construction of a contract that is determined by the plain language of the contract, the question is one of law).

### Work Stoppage on St. Johns Avenue

■ JJ & G required Griffin to stop construction at the St. Johns location for safety concerns. In addition, JJ & G imposed conditions upon Griffin before it would allow Griffin to continue construction at the site. The site was closed for thirty-four days. Griffin argues JJ & G was professionally negligent in its supervision of the contract in two ways: (1) in shutting down the site, and (2) by keeping the site closed for thirty-four days. The contract between CPW and Griffin required Griffin comply with all Occupational Safety and Health Administration (OSHA) safety regulations. John Bell, the JJ & G engineer supervising the site, noted the trench Griffin dug at the excavation site had no safety measures in place to prevent cave-ins. OSHA regulations require such safety precautions to be implemented when the trench exceeds a certain depth. As a result, Bell closed down the site until Griffin complied with OSHA regulations.

Griffin argues OSHA requirements are matters of common knowledge and do not require expert testimony. We disagree. Expert testimony respecting the standard of care for the professional engineering industry for such a situation is necessary to determine whether JJ & G behaved negligently by closing down the site for thirty-four days.

### Consultant's Costs

Griffin contends it was required to hire consultants because of the negligent supervision and unsuitable design plans provided by JJ & G. It argues these costs constitute damages resulting from JJ & G's negligence and breach of implied warranties. Since we find that the grant of summary judgment was appropriate on all causes of action, the circuit court did not err when it granted summary judgment on Griffin's claim to recover consultant costs.

### III. Summary Judgment on Griffin's PEN III Claim

■ Griffin argues that a letter sent by JJ & G to Griffin's bonding company, USF & G, on November 6, 1987, resulted in

USF & G restricting Griffin's bonding capacity. Griffin contends the restriction limited its ability to bid on other contracts during this period. The letter reads in pertinent part as follows:

> We [JJ & G] have noted that you [Griffin] have now completed approximately 45% of the project and have been paid 41.5% of the funds. This would normally be an acceptable ratio of work completed versus funds paid but in this case, we are concerned. Our reasons are that we feel that you have completed the less complicated portions of the work and that the remaining portions of the work would appear to be far more difficult and costly.
>
> As examples, you have not grouted any of the tunnels and you must still complete very difficult areas such as [t]he Filbin Creek Crossing, [t]he Fiddler Creek Crossing, Eubank Street, [t]he Meeting Street Crossing, Carver Street and Rexton Street to name a few.
>
> For all the above reasons [CPW] and its Engineer [JJ & G] require your advice as to your ability, intent, and financial capability to complete the [PEN II] project within the plans and specifications and contract completion time.

Harold Pruitt, USF & G's agent, stated in an affidavit, "[a]s a direct result of the receipt of JJ & G's status report and subsequent November 6, 1987 letter, [Griffin's] bonding capacity was completely restricted for approximately a month and a half, and restricted to small projects through March of 1988. USF & G did not extend authority to bond a substantial project until May 31, 1988, when it bonded a $2,000,000 project."

Griffin argues JJ & G was professionally negligent in its contract supervision role when it sent this letter to USF & G. Griffin however does not offer any expert testimony regarding the standard of care by professional engineering firms faced with the same facts confronting JJ & G. The appropriate behavior for a professional engineering firm in its supervisory role is not a matter of common knowledge. JJ & G met its burden as the moving party on summary judgment by showing Griffin failed to present expert testimony to prove this claim. Once the moving party has met its burden, the non-moving party may not rest solely on the allegations raised in

its pleadings. *Midland Mut. Life Ins. Co. v. Harrell,* 331 S.C. 394, 397–98, 503 S.E.2d 189, 190–91 (Ct.App.1998). The trial court properly granted JJ & G's motion for partial summary judgment.

For the foregoing reasons the order of the trial court is

**AFFIRMED.**

STILWELL and SHULER, JJ., concur.