Michael A. SPIRES, Plaintiff,

v.

ACCELERATION NATIONAL INSURANCE COMPANY, RDR Insurance Services, Inc., Transportation Insurance Specialists, Inc., USA Insurance Group, Inc., and Ralph Royster, Defendants.

No. C.A. 9:04–1989–23.

United States District Court,
D. South Carolina,
Beaufort Division.

Jan. 12, 2006.

Grahame Ellison Holmes, Peters, Murdaugh, Parker, Eltzroth and Detrick, Walterboro, SC, John E. Parker, Peters, Murdaugh, Parker, Eltzroth and Detrick, Hampton, SC, for Plaintiff.

J.W. Nelson Chandler, Susan Taylor Wall, Parker, Poe, Adams and Bernstein, Charleston, SC, for Defendants.

### ORDER

DUFFY, District Judge.

This matter is before the court on Defendants RDR Insurance Services, Inc. ("RDR") and Ralph Royster's ("Royster") Motion for Summary Judgment.

### FACTS

This is an insurance broker malpractice action in which Plaintiff contends that De-

fendants negligently recommended and negligently misrepresented the financial stability of Acceleration National Insurance Company ("Acceleration"). The facts of this case, as supported by the record and considered in the light most favorable to Plaintiff, are as follows:

### A. Halls of Cross, Inc. and the Subject Commercial Auto Liability Policy

Halls of Cross, Inc. is a sand and gravel trucking and hauling operation based out of Cross, South Carolina. Halls of Cross, Inc. must carry multiple types of insurance, and Richmond Halls ("Halls"), the owner of Halls of Cross, Inc., regularly "shops" his business among several insurance agencies, including Defendant RDR. (Halls Depo. at 11–13, 36; Pl. Exhibit E.) As of 1997, RDR had placed Halls of Cross' commercial auto liability insurance (on the approximately thirty large trucks in its fleet) with Commerce and Industry Insurance Company, a company owned by AIG. (Hargrove Report at 3, Exhibit 9 to Hargrove Depo, Def. Exhibit F; Halls Depo. at 30, Def. Exhibit E.) Prior to the expiration of the policy on May 14, 1998, Commerce issued a "notice of nonrenewal" to Halls of Cross, indicating it would no longer write the insurance. (Hargrove Report at 3, Def. Exhibit F.) Defendant Royster, an insurance agent for Defendant RDR, began searching the marketplace for a replacement policy for Halls of Cross, Inc. Due to the high risks associated with the trucking business, Royster was unable to place the risk directly with a carrier represented by RDR.[1] Accordingly, Royster sought a referral to TIS, a managing general agent that writes insurance for trucking companies. (Royster Depo. at 9, 14–15, Def. Exhibit A.) An underwriter for TIS reported that TIS might have a market that would consider the account. *Id.* Royster submitted an application with Acceleration through TIS, Acceleration issued a quote, and Royster presented the option to Halls. *Id.* at 22. Royster told Halls that Acceleration was a good, reliable and sound insurance company. Halls stated that he relied on Royster's judgment in purchasing the subject policy. (Halls Depo. at 55, Pl. Exhibit B.) Acceleration provided the subject commercial auto liability insurance to Halls of Cross, Inc. from May of 1998 to May of 2000. At all times during this policy period, Acceleration was solvent and was licensed and approved to conduct business in the State of South Carolina pursuant to a Certificate of Authority from the South Carolina Department of Insurance.

On November 29, 2000, almost seven months after the Acceleration policy expired, the State of Ohio issued an Order of Rehabilitation against Acceleration prohibiting all insurance agents from transacting any new business with Acceleration as it was "in such condition that its further transaction of business would be financially hazardous to its policy holders, creditors or the public." (Order of Liquidation at 2, Def. RDR's Exhibit I.) Thereafter, the State of Ohio issued a Final Order of Liquidation and Appointment of Liquidator on Behalf of Acceleration National Insurance Company on February 28, 2001 declaring Acceleration insolvent and enjoining Acceleration from "conducting, operating, or engaging in the business of insurance." (Order of Liquidation at 2, Def. RDR's Exhibit I.)

### B. The Underlying Action

On October 28, 1999, Plaintiff Michael Spires's car ("Plaintiff" or "Spires") was struck by a gravel truck operated by

---

1. Defendants' expert Gerald Hargrove testified that Halls of Cross, Inc. was "close to uninsurable." (Hargrove Report at 6, Def. Exhibit F.)

James Williams ("Williams"), an employee of Halls of Cross, Inc. Spires suffered significant injuries to his back, neck, shoulder, and arms, and has required several surgeries and medical procedures. He has incurred approximately $100,000.00 in medical bills as a result of the collision.

Spires filed Civil Action 2001–CP–25–443 (the "underlying action") in the Hampton County Court of Common Pleas on September 13, 2001, seeking actual and punitive damages against Williams and Halls of Cross, Inc.

As a result of its insolvency, Acceleration did not provide Williams or Halls of Cross, Inc. with an attorney to defend the underlying action. Further, Acceleration did not provide any coverage to insure Williams or Halls of Cross, Inc. against Spires's personal injury claims.

Spires carried uninsured motorist coverage through his own personal policy. Under this coverage, Spires was eventually paid the policy limits of the uninsured motorist coverage. (Moon Depo. at 47, Pl. Exhibit C.) In May of 2002, the South Carolina Property and Casualty Insurance Guaranty Association ("Guaranty Association") assumed the defense of the underlying action. (Moon Depo. at 47, Pl. Exhibit C.) The Guaranty Association decided that Spires's claim "should be settled subject to the terms of the Guaranty Act, which reduced the limit of liability to $300,000.00, subject to the offsets of other insurance." (Moon Depo. at 51–52, Pl. Exhibit C.) After offsetting Spires's uninsured motorist coverage and health insurance, the Guaranty Association paid $237,000.00 to Spires. This payment represented only Guaranty Association's liability limits and the underlying action was not settled as a result. (Moon Depo. at 52, Pl. Exhibit C.)

In settlement of the underlying action, Spires, Williams, Halls of Cross, Inc., and the Guaranty Association entered into an agreement (the "Agreement"). Under the Agreement, Williams and Halls of Cross, Inc. agreed to confess a judgment in favor of Spires in the amount of $1,729,000.00. The parties agreed the judgment would be reduced by the $228,875.00 paid to Spires by the Guaranty Association. Williams and Halls of Cross, Inc. further agreed to "assign and transfer to Michael Spires all of their claims and causes of action of every nature against Bob Royster, RDR Insurance, Inc . . . . on account of misrepresentations, breaches of contract, and negligence involved with the sale of a motor vehicle insurance policy to Halls of Cross, Inc. by Bob Royster, RDR Insurance Services, Inc., and Acceleration National Insurance Company, and the failure of Acceleration National Insurance Company to provide coverage to Halls of Cross, Inc. and James A. Williams for the collision in which Michael A. Spires was injured on October 28, 1999." (Agreement, Def. Exhibit L.)

## C. Procedural History

Pursuant to the terms of the Agreement, Plaintiff, standing in the shoes of Halls of Cross, Inc. and Williams, filed this action in South Carolina Court of Common Pleas on January 20, 2004, asserting causes of action for negligent misrepresentation, negligence per se, negligence, and gross negligence against Acceleration, RDR, TIS, USA Insurance Group, In., and Ralph Royster.

Defendants removed Plaintiff's action to this court on June 22, 2004 pursuant to 28 U.S.C. §§ 1441 and 1446 based on diversity jurisdiction. 28 U.S.C. § 1332(a). Because it was in liquidation and was therefore not a viable defendant, the court dismissed Acceleration from this action. Plaintiff also voluntarily dismissed Defendants TIS and USA Insurance Group, Inc. The remaining parties, RDR

and Royster, now move for summary judgment.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury court reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

### (1) Negligence and Gross Negligence

In South Carolina, expert testimony is required in a professional negligence action to establish both the standard of care and the defendant's failure to conform to that standard. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 351 S.C. 459, 570 S.E.2d 197, 203 (2002). As Defendants rightly note, Plaintiff fails to introduce expert testimony as to the appropriate professional standard of care for an insurance agent. Without such expert testimony, a cause of action for negligence and gross negligence cannot withstand a motion for summary judgment. *Id.* Plaintiff concedes as much. (Op. to Sum. Jud. at 7.) Accordingly, the court dismisses this cause of action without further discussion.

### (2) Negligent Misrepresentation

Under South Carolina law, in order to maintain an action for negligent misrepresentation for a pecuniary loss, the plaintiff must establish the following six elements:

(1) that defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as a proximate result of his reliance upon the representation.

*AMA Management Corp. v. Strasburger*, 309 S.C. 213, 420 S.E.2d 868 (1992); *see also Fields v. Melrose Ltd. Partnership*,

312 S.C. 102, 439 S.E.2d 283, 285 (1993). In addition, to be actionable, the representation must relate to a present or pre-existing fact and be false when made. *Id.* "The representation cannot ordinarily be based on unfulfilled promises or statements as to future events." *Id.*

While presenting Acceleration's offer to insure Halls of Cross, Inc. in 1998, Royster allegedly represented to Halls that Acceleration was a "financially solvent and financially sound insurance company."[2] (Amended Complaint at 3.) While Acceleration was solvent at the time this alleged statement was made, the company was given a "B" rating by A.M. Best, "the industry's most notable rating organization." (Hargrove Report at 7, Def. Exhibit F.) As a "B" rated company, A.M. Best considered Acceleration to be "vulnerable" due to its "historically unfavorable operating performance, lack of internal capital generation and exposure to a new and unseasoned commercial book of business." (A.M. Best's Insurance Reports, 1998 Edition at 1–3, Pl. Exhibit G.) A.M. Best also rated Acceleration as a "B" company in 1999, when the subject policy was renewed through Defendants, and stated the same concerns in their report. (A.M. Best's Insurance Reports, 1999 Edition at 1–4, Pl. Exhibit H.) Plaintiff therefore contends that Royster's statement that Acceleration was "financially solvent and financially sound" was necessarily a false statement.[3]

■ After a thorough review of the record, the court finds that Plaintiff has failed to present sufficient evidence that Royster made a false statement to Halls. The only evidence that Royster ever commented positively upon the financial stability of Acceleration comes from Halls' depositions:

Q: When you acquired the insurance with Mr. Royster, what were you told about Acceleration Nations and the company that he was placing you with?

A: To be honest with you, he didn't really tell me anything. He said he got a good insurance company for me and this is what he can do it for, you know, and they give me the idea on my trucks and trailers and stuff. That's all I did.

Q: Did you ask him about whether or not that was a reliable insurance company? A good insurance company?

A: He told me yeah. I asked him that. He say yeah.

Q: In other words, did you ask him if they were financially sound and a company that could stand behind their obligations?

A: I didn't go through all that, to be honest with you.

---

**2.** The exact content of this conversation is contested. Royster asserts that he described the import of Acceleration's "B" rating to Halls. Halls cannot recall any specifics from the conversation, but asserts that Royster told him nothing negative about Acceleration and assured him that it was a "good" and "sound" company. (Royster Depo. at 23, Def. Exhibit A; Halls Depo. at 12, Pl. Exhibit D.) Taking the facts in the light most favorable to Plaintiff, a jury could find that Royster did tell Halls that Acceleration was a financially sound company.

**3.** Plaintiff originally alleged that Acceleration was insolvent at the time Royster made these statements. At this time, however, it is undisputed that Acceleration did not become insolvent until December of 2002—over six months after the subject policy expired. Accordingly, the only alleged statement that could be considered false is the statement that Acceleration was "financially sound" in 1998–99.

Q: He just told you that they were a sound company?

A: Right.

Q: And you relied upon his judgment for that?

A: Oh, yeah.

(Halls Depo. at 12, Pl. Exhibit D.)

In a later deposition, Halls claims to have no recollection at all of the discussion with Royster regarding Acceleration:

Q: Okay. And do you remember discussing the Acceleration policy with Mr. Royster?

A: All he do is tell me he got me some insurance.

Q: Okay.

A: Okay?

Q: Did you ask him any questions about the insurance?

A: No, sir.

Q: Did he talk to you about Acceleration National?

A: No, sir.

Q: Did he inform you that it was a B-rated company?

A: No, sir.

Q: You don't remember a discussion regarding that?

A: I don't remember discussing that.

Q: Is it possible that that was discussed?

A: I doubt it.

Q: But it could have been?

A: I'm not going to say anything. I don't know.[4]

(Hall Depo. at 24–25, Def. Exhibit E.)

These deposition excerpts are the only evidence Plaintiff presents to show that Royster made false statements to Halls regarding the financial stability of Acceleration. Considering this deposition evidence in the light most favorable to Plaintiff, the court finds that the most Royster said was that Acceleration was a "sound" insurance company. Such a statement, which the court notes is hardly a strong endorsement, is not made false by the fact that Acceleration had a "B" A.M. Best rating. According to the South Carolina Code, the South Carolina Department of Insurance "shall revoke or suspend" a Certificate of Authority granted to an insurer when, among other things, the insurer "is in an *unsound* condition." S.C.Code Ann. § 38–5–120. Such regulation of insurance companies is properly the province and responsibility of the South Carolina Department of Insurance. An insurance company's Certificate of Authority, therefore, is evidence of the Department of Insurance's determination that such company is in a sound condition. Plaintiff has presented no evidence that this Department's determinations regarding companies within its purview are anything but accurate. As such, stating that an insurance company is "sound" while it has a valid Certificate of Authority is not a false statement.

In this case, it is uncontested that Acceleration's South Carolina Certificate of Au-

---

4. Royster has a more precise memory of this conversation. His version of this conversation is as follows:

Q: And what did you then do?

A: I took the quote to Mr. Halls and presented it to him as an option that he might consider.

Q: What did you tell Mr. Halls?

A: I told him that I couldn't get any other company to quote him, that this company was B-rated. He asked me what that meant. I told him that ratings were very broad, that in the event that the company were to become insolvent, that the Guaranty Fund would step in to protect him. And I also told him that if he could obtain insurance from an A-rated carrier with an agent, that I encouraged him to do that.

(Royster Depo. at 23, Def. Exhibit A.)

thority was not suspended until 2000, after the termination of the renewal policy. As such, the court finds that Royster's statement that such company was "sound" in 1998 and 1999 is not a false statement. Because Defendant did not make a false statement, Plaintiff cannot establish the existence of the first essential element of a negligent misrepresentation cause of action.

### (3) Negligence Per Se

 Negligence per se is a negligence cause of action that arises from a defendant's violation of a statute. *Rayfield v. South Carolina Department of Corrections,* 297 S.C. 95, 374 S.E.2d 910, 915 (1988) ("Negligence per se simply means the jury need not decide if the defendant acted as would a reasonable man in the circumstances. The statute fixes the standard of conduct required of the defendant, leaving the jury merely to decide whether the defendant breached the statute. If he did, his failure to take due care is established as a matter of law. The only issue then left for the jury to determine is the third element of negligence, viz., whether the defendant's conduct proximately caused damage to the plaintiff."); *see also Trivelas v. South Carolina Dept. of Transp.,* 348 S.C. 125, 558 S.E.2d 271, 275 (2001). Plaintiff argues that Defendants violated S.C.Code Ann. § 38–43–190 and are therefore liable for negligence per se. This statute provides,

> An agent who knowingly procures the payment of a premium of insurance or the obligation for the payment of a premium of insurance *by fraudulent misrepresentation* is guilty of a misdemeanor and, upon conviction, must be fined in the discretion of the court or imprisoned not more than three years, or both.

S.C.Code Ann. § 38–43–190.

 To prove elements of fraudulent misrepresentation, as distinguishable from negligent misrepresentation, a plaintiff must show that the defendant conveyed a known falsity. *Hurst v. Sandy,* 329 S.C. 471, 494 S.E.2d 847 (1997). As discussed above, Plaintiff has failed to show that Royster's alleged statement that Acceleration was "financially sound" was false. Further, the court finds that Plaintiff neither alleges nor presents evidence that shows that Royster had actual knowledge that Acceleration was a financially unstable entity. Certainly, there is no evidence that Royster knew or could have known that Acceleration would eventually become insolvent. Accordingly, Plaintiff has failed to present facts sufficient to support his contention that Defendants have violated S.C.Code Ann. § 38–43–190.

Because the record fails to support Plaintiff's contention that Defendants violated the relevant statute, the court need not address whether such violation would constituted negligence per se, whether it could create a private cause of action, or whether this claim would be assignable.

### CONCLUSION

It is therefore,

**ORDERED** for the foregoing reasons that Defendants' Motion for Summary Judgment be **GRANTED** and this case **DISMISSED**.

**AND IT IS SO ORDERED.**