## 21406

Stephen Wilson LAWRIMORE, as Trustee, Respondent, v. AMERICAN HEALTH AND LIFE INSURANCE COMPANY, Appellant.

(276 S. E. (2d) 296)

*John B. McCutcheon* of *McCutcheon & McCutcheon,* Conway, *for appellant.*

*David R. Gravely* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondent.*

March 10, 1981.

HARWELL, Justice:

American Health and Life Insurance Company appeals from a verdict finding it liable to the respondent Stephen

Wilson Lawrimore, as trustee, for the value of a life insurance policy. We affirm.

The central issues involved in this appeal are (1) whether waiver of the initial premium due on the policy was properly pled and introduced into the trial of the action; and (2) whether the evidence supports the apparent finding that American waived its right.

As a general rule, waiver is a matter which must be specifically pled. *Griffith v. Newell*, 69 S. C. 300, 48 S. E. 259 (1904). See, Lightsey, Code Pleading, at 89 (1976). But strict use of the word "waiver" in the pleading is not required if the pleading alleges the facts that constitute a waiver. *Carolina Mechanical Contractors, Inc. v. Yeargin Construction Company, Inc.*, 261 S. C. 1, 198 S. E. (2d) 224 (1973); *Crescent Company of Spartanburg, Inc. v. Insurance Company of North America*, 266 S. C. 598, 225 S. E. (2d) 656 (1976).

This action was commenced by the respondent to seek the proceeds of a life insurance policy issued to Rubin McLaurin Lawrimore and allegedly in effect at his death. The amended complaint contains a general allegation of payment of any premium due. It is then further alleged:

"4. That the descedent Rubin McLaurin Lawrimore by request dated August 4, 1976, and acknowledged August 27, 1976, added a beneficiary endorsement to the policy No. 171911 which endorsement changed the principal beneficiary to the Plaintiff.

"5. That the request for the change of beneficiary endorsement which had been acknowledged by the Defendant on August 27, 1976, was forwarded to the decedent's counsel on September 10, 1976, for attachment to the policy of insurance issued on the life of Rubin McLaurin Lawrimore."

Waiver is defined as an intentional relinquishment of a known right. *Brown v. State Farm Mutual Automobile Liability Insurance Company*, 233 S. C. 376,

104 S. E. (2d) 673 (1958). The respondent contends that the allegations raised the inference that the policy was in effect and that American had therefore waived any rights it may have had to insist upon any performance of conditions precedent. The appellant argues that the pleading does not raise the issue and that it should not have been heard at trial.

We believe that the pleading establishes the issue of waiver from the facts alleged. The issue having been introduced, the relative sufficiency of the pleading as to that matter cannot now be appealed to this Court since American defended against the waiver issue on the merits and failed to object to the pleadings during the trial. *Elliott v. Dew,* 264 S. C. 40, 212 S. E. (2d) 421 (1975). See also, *Johnson v. Williams,* 238 S. C. 623, 121 S. E. (2d) 223 (1961). No unfairness or surprise is demonstrated. The attack on the sufficiency of the pleading after the verdict had been rendered comes too late. 120 A. L. R. 8, 124-125.

We turn now to the question of whether American's motions for directed verdict and judgment *non obstante veredicto* were properly denied. American contends that the evidence is only susceptible to the conclusion that respondent failed to establish any proper, valid or applicable waiver of premiums. We disagree.

The testimony reveals that Rubin McLaurin Lawrimore was employed by the Paul N. Howard Company and working in Oklahoma in December, 1975, when he was selected by the Howard Company in joint venture with Harbert Construction Corporation for a job in the Middle East. He was flown to Birmingham, Alabama to complete an employment agreement and to receive further instruction. While in Birmingham, Rubin was advised that insurance coverage was available to him. He therefore elected to meet with James Robert Reynolds, an insurance salesman for Associated Insurance Brokers. At this time Associated was a full-time

general agency for American Health and Life Insurance Company.

Reynolds initially stated that he explained the coverage of the life policy to Rubin Lawrimore and advised him that the premiums would be cash on delivery upon receipt of the insurance policy. Donald Franklin, the personnel manager for Harbert-Howard stated that he had informed Lawrimore that the insurance was available and that payments of the premium would be on a fifty-fifty basis, with fifty percent of the premium being paid by the company and the other half being paid by payroll deduction. Reynolds himself admitted that he probably advised Lawrimore that the payment of the policy was by payroll deduction upon receipt of the policy or by payment on delivery.

Franklin stated that once Harbert-Howard knew that the insurance was in effect, the company would begin the necessary payments and deductions and would direct the payments to Associated. He further testified that Associated did not bill the company on any sort of basis but that the company sent monthly payments by its own plan.

For some reason, Lawrimore's application, bearing the date of December 5, 1975, and medical examination report did not reach American until February 9, 1976. At this time American determined that the application had not been signed by the general agent and that the physical examination was not complete. The application was sent back, signed, and then returned on February 24, 1976. The requests as to the physical were sent to the general agent but were never honored. On March 19, 1976, American decided to waive the requirement and approve the application.

The policy, policy identification type cards and a request for change form were mailed to Associated on March 26, 1976. The change form, which required Lawrimore's signature, was to reduce the premium since the nature of Lawrimore's work prevented the activation of certain policy benefits. American's Glenn Andrews testified that a notice of

premium due would have gone out with the policy. No copy of the notice was introduced, however, and Reynolds testified that he was not positive that there was one.

When American mailed the policy to Associated, the agency made certain file copies and then directed the policy to Franklin at Harbert-Howard. No specific instructions accompanied the policy. Franklin stated that he considered the policy as an individual matter and simply mailed the policy to Lawrimore. No instructions accompanied the policy and nothing was said as to the status of the premium. Harbert-Howard never paid any amount, directly or by deduction, on the policy since it was received after Lawrimore's employment termination due to radical surgery to remove a cancerous hip.

The change of policy form attached to the policy was signed by Lawrimore and returned to the agency. The insurance company received this back on April 30, 1976. After delivery of the insurance policy to Lawrimore, American never mailed any notice of cancellation to him at his Conway address, though American did have the address. Instead, the company sent several notices of premium due to Associated but no response was received. Associated, meanwhile had never mailed any premium notice to Lawrimore. Apparently, no further communications were sent to Harbert-Howard either, due perhaps to the informal nature of premium collection practiced by the agency.

During the summer of 1976 Lawrimore had a trust agreement drawn up, the corpus of which is the policy at issue. The respondent agreed to serve as trustee.

Lawrimore contacted American in June to determine the status of his policy's cash surrender value. On June 29, 1976, American simply informed him that a term policy carries no such value. In August Lawrimore sent a change of beneficiary endorsement and copy of the trust agreement to the company. American made the changes and sent the endorsement back for attachment to the policy on September 10,

1976. No mention of the cancellation was made. The insurance company was apparently undergoing computer-processing changes at the time and the employee who answered Lawrimore's correspondence did not deem it practical to locate the actual file prior to handling the correspondence.

Lawrimore's condition worsened in the fall of 1976 and he died on January 24, 1977. Respondent then attempted to file a claim with American but the company advised that no premiums were ever received on the policy and that the policy was therefore never in force.

American steadfastly maintains that payment of the initial premium was a condition precedent to effectuation of the policy. Since the premium was never paid, the appellant contends that no contract was ever formed. We disagree, on the basis of the following propositions of law.

Waiver may arise by expression or by implication. "If the company, who had a right under the contract . . . shall make any speech or perform any act from which a reasonable inference may be drawn that the company does not stand upon its right, then waiver may be inferred." *Williams v. Philadelphia Life Insurance Company,* 112 S. C. 436, 100 S. E. 157, 160 (1919). Waiver of prepayment of the initial premium may be implied from unconditional delivery of the policy without requiring its payment, or from extensions of time for payment. *Wright v. New England Mutual Life Insurance Company of Boston, Mass.,* 165 S. C. 190, 163 S. E. 133 (1932); *Henderson v. Capitol Life & Health Insurance Company,* 199 S. C. 100, 18 S. E. (2d) 605 (1942). And in *Galphin v. Pioneer Life Insurance Company,* 157 S. C. 469, 154 S. E. 855 (1930), this Court held that an insurer's agent having authority to deliver a life policy and to collect the premium possessed implied authority to vary the mode and time of payment of the premium.

The facts in this case clearly support the conclusion that American, through its general agent, knowingly waived the "cash on delivery" requirement, thus

allowing the policy to become effective prior to payment of the premium. A monthly premium installment plan was followed. The policy was unconditionally given to the decedent's employer who in turn unconditionally gave it to the decedent. No attempts were ever made to contact the decedent and clarify the matter or to collect the premium even though both the insurer and its agent had the decedent's address. The policy itself provides on its face that, "After its delivery to the Insured, this Policy takes effect as of the Date of Issue." (The date of issue was March 19, 1976). Also, at trial American's Andrews made the following admission on cross-examination:

"Q. . . . I'd like to ask you if this is a fair statement. That American Health and Life does not actually deliver the policy to the insured until all provisions and conditions have been met? Is that a fair statement?
"A. Yes, sir."

We conclude that the evidence fully supports the verdict and that the appellant's motions for directed verdict and for judgment *non obstante veredicto* were properly denied.

Appellant's other exceptions have been considered but no error appears. Since full discussion would be of no precedential value, we dispose of these pursuant to Rule 23.

Respondent is entitled to the face amount of the policy ($75,000), but less the amount of the premium actually due ($166.50). Respondent is also entitled to any interest due as allowed by the trial judge.

Affirmed and modified.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.