# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Covil Corporation, by and through its duly appointed
Receiver, Peter D. Protopapas, Respondent,

v.

Pennsylvania National Mutual Casualty Insurance
Company, Appellant.

Appellate Case No. 2020-001239

―――――――――

Appeal From Richland County
Jean Hoefer Toal, Acting Circuit Court Judge

―――――――――

Opinion No. 5888
Heard November 2, 2021 – Filed January 5, 2022

―――――――――

**AFFIRMED**

―――――――――

David G. Harris, II, Brady A. Yntema, and David L.
Brown, all of Goldberg Segalla, LLP, of Greensboro,
NC, for Appellant.

Jescelyn Tillman Spitz, of Rikard & Protopapas, LLC, of
Columbia, Jonathan M. Robinson and Shanon N. Peake
of Smith Robinson Holler DuBose Morgan, LLC, of
Columbia, G. Murrell Smith, Jr., of Smith Robinson
Holler DuBose Morgan, of Sumter, and William Bradley
Nes, of Washington, DC, all for Respondent.

―――――――――

**THOMAS, J.:**  Covil Corporation, by and through its duly appointed Receiver, Peter D. Protopapas (Covil), filed this action against Pennsylvania National Mutual Casualty Insurance Company (Penn) alleging breach of insurance contracts based on Penn's failure to participate in the settlement of an underlying claim against Covil.  Penn appeals the circuit court's order granting partial summary judgment to Covil, arguing the court erred in (1) granting partial summary judgment where Covil's motion was not supported by sworn affidavits and summary judgment was premature; (2) finding Covil's late notice of the underlying claim did not bar coverage; and (3) holding coverage existed despite a products hazard and operations hazard exclusion in the Penn insurance contracts.  We affirm.

**FACTS**

Covil is a corporation that operated between 1954 and 1991.  Its operations "included the installation, repair, replacement, removal or disturbance of thermal insulation and other building materials."  Covil's operations allegedly exposed persons to asbestos, resulting in claims and lawsuits against it.  Penn insured Covil under comprehensive general liability policies between March 1986 and March 1988.  One of the lawsuits against Covil, *Rollins v. Air & Liquid Systems Corp.*, alleged David Rollins was exposed to asbestos due to Covil's operations during the covered period.  In November of 2018, the circuit court appointed Protopapas to serve as a Receiver for Covil.

Rollins filed his action on April 22, 2019, alleging he suffered from mesothelioma due to, *inter alia*, exposure at home from his stepfather, who worked at the Bowater Paper Mill where Covil did work between 1986 and 1988.  Rollins' at home exposure allegedly occurred because his stepfather routinely came home from work covered in asbestos dust between 1980 and 1991.

On January 27, 2020, Covil's Receiver emailed Penn and requested it attend a court-ordered mediation to settle the *Rollins* action.  The notice "respectfully request[ed] that the insurers provide and/or continue to provide a defense to Covil Corporation in these asbestos lawsuits.  To the extent that a defense will not be provided, please advise so that [Covil] can take the actions necessary . . . ."  The email indicated a copy of the *Rollins* complaint was attached.  On February 3, 2020, Covil tendered the complaint by letter to Penn for defense and indemnity.  The letter requested Penn "immediately advise in writing whether [it would] . . . accept Covil's tender of [the] suit and . . . provide a full and complete defense of th[e] matter."

Penn responded by sending a Non-Waiver Agreement to Covil's Receiver signed by Penn but not signed by Covil.  Penn alleged it was notified of the pending lawsuit on January 27, 2020, and notified of the mediation on February 13, 2020.  The mediation was held on February 25, 2020.  Penn admitted it "attended the mediation, and expressed a willingness to contribute some amount to the settlement on behalf of Covil."  The Receiver settled Rollins' claim for a confidential amount.

On February 28, 2020, Covil filed this breach of contract action against Penn, alleging that although Penn attended the mediation, it refused to participate in the settlement and refused to contribute $50,000 to the settlement.  Covil sought damages of up to $74,999.99 for breach of contract, including, *inter alia*, actual damages, consequential damages, attorney's fees, and prejudgment interest.  On April 22, 2020, Covil filed a motion for partial summary judgment, arguing Penn wrongly refused to pay the settlement based on exclusions in its policies.

Penn filed a return to the motion for summary judgment, arguing the first notice it had of the lawsuit was the email sent on January 27, 2020.  Penn argued Covil was served with the *Rollins* action in April of 2019, Rollins was deposed in February and June of 2019 without any notice to Penn, and the parties engaged in other discovery as required by the Master Asbestos Discovery/Scheduling Order.  Penn argued that due to the late notice, it was unable to evaluate the potential coverage prior to the mediation.  Penn also argued the "Completed Operations Hazard and Products Hazard" exclusion in the policies barred coverage.  In addition, Penn argued summary judgment was premature because it had not had a full and fair opportunity for discovery.

Citing *Re: Operation of the Trial Courts During the Coronavirus Emergency*, South Carolina Supreme Court Order dated April 3, 2020, the trial court found the motions had been fully and comprehensively briefed and a hearing was unnecessary.  The court found Penn failed to prove the exclusions it relied on barred coverage.  The court also found Penn's late notice defense was "not a valid defense to breach of its insurance contract with Covil."  Thus, by order filed August 13, 2020, the court found Penn was "required to indemnify Covil against the settlement of the *Rollins* action."

Penn moved for reconsideration, again arguing it had late notice, its policy exclusion applied, and summary judgment was premature because discovery was not yet completed.  The court denied the motion.  This appeal followed.

**STANDARD OF REVIEW**

"When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP . . . ." *Callawassie Island Members Club, Inc. v. Dennis*, 429 S.C. 493, 497, 839 S.E.2d 101, 103 (Ct. App. 2019), *cert. denied*, Jan. 22, 2021. The standard in Rule 56(c) "provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

**LAW/ANALYSIS**

**I.      Unsupported and Premature Grant of Summary Judgment**

Penn argues the circuit court's grant of summary judgment was improper because it was unsupported and premature. We disagree.

**A.      Unsupported**

For the first time on appeal, Penn argues the circuit court erred in granting summary judgment because Covil's motion for summary judgment was unsupported by failing to include affidavits or authenticated documents. Because this issue was neither raised to nor ruled upon by the circuit court, it is not preserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review.").

**B.      Premature**

Penn also argues the circuit court erred in granting summary judgment because it was premature and denied it a full and fair opportunity to complete discovery. We disagree.

As noted by the circuit court, this action arises out of the *Rollins* asbestos personal injury action against Covil. There is no dispute that the exposure to asbestos alleged in *Rollins* occurred while Covil was performing operations at the Bowater Paper Mill during the period of Penn's policy number 515 5028 537, which was effective March 31, 1986, to March 31, 1987. As stated by the circuit court, "[t]he

principal dispute [in this case] is whether an exclusion in the Penn . . . policy applies to bar coverage for the *Rollins* action."  As also found by the circuit court, Penn failed to submit a Rule 56(f) affidavit explaining the discovery it needed to conduct.  Penn merely presented an "unsupported . . . and self-serving assertion that it needed additional time for discovery . . . ."

In its argument regarding prematurity, Penn relies on *Baughman v. American Telephone & Telegraph Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).  In *Baughman*, our supreme court reversed a grant of summary judgment to the defendant as premature.  *Id*. at 114, 410 S.E.2d at 545.  However, the court in *Baughman* found the plaintiffs had demonstrated a likelihood that further discovery would uncover additional, relevant evidence.  *Id.* at 112, 410 S.E.2d at 544.  Also, the court found the plaintiffs had not been dilatory in seeking discovery.  *Id.* at 113, 410 S.E.2d at 544.

Here, even if Penn was not dilatory for failing to provide evidence it began discovery between the filing of this action in February 2020 and the filing of the court's order granting partial summary judgment in August 2020, it did not demonstrate further discovery would uncover additional, relevant evidence.  Instead, it argues the additional discovery was needed to support the issues raised in this appeal: late notice and the applicability of exclusions in the policies.  However, as found by the circuit court, Penn failed to submit a Rule 56(f) affidavit setting forth the discovery it needed to conduct.  Thus, we find no reversible error.  *See* Rule 56(e), SCRCP ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); Rule 56(f), SCRCP (applying when it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition"); *Doe ex rel. Doe v. Batson*, 345 S.C. 316, 320, 548 S.E.2d 854, 856 (2001) (stating that a party opposing summary judgment is required to come forward with affidavits or other supporting documents demonstrating the existence of a genuine issue for trial); *id*. at 321, 548 S.E.2d at 857 (finding Rule 56(f), SCRCP "requires the party opposing summary judgment to at least present affidavits explaining why he needs more time for discovery").

## II.    Late Notice

Penn argues the circuit court erred in finding Covil's late notice of the *Rollins* lawsuit did not bar coverage for Covil. We disagree.

The policies at issue contained notice provisions as follows:

> **Insured's Duties in the Event of Occurrence, Claim[,] or Suit.**
> (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured . . . shall be given by or for the insured to [Penn] . . . as soon as practicable.
> (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to [Penn] every demand, notice, summons[,] or other process received . . . .

The circuit court found that although Penn argued a late notice defense, it admitted "a representative of Penn . . . attended the mediation and expressed a willingness to contribute toward [the] settlement on behalf of Covil." The court also found Penn hired the same defense counsel as the other insurers, had access to the same evidence as the other insurers, and deliberately decided not to contribute by "presumably" relying on its policy exclusions. Without citing waiver, the circuit court appears to have concluded Penn waived its rights under the notice provision by attending the mediation. Although Penn sent Covil a Non-Waiver Agreement, it admitted it thereafter attended the mediation and expressed a willingness to contribute toward settlement on behalf of Covil. In addition, Penn did not cite to any discovery it attempted to undertake during the pendency of the action between February 2020, when the action was filed, and August 2020, when the circuit court ruled on Covil's motion for partial summary judgment.

"An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein." *Fender v. New York Life Ins. Co.*, 158 S.C. 331, 340, 155 S.E. 577, 580 (1930) (quoting *Gandy v. Orient Ins. Co.*, 52 S.C. 224, 229, 29 S.E. 655, 656 (1898)). "Waiver is the voluntary and intentional relinquishment of a known right." *Provident Life & Acc. Ins. Co. v. Driver*, 317 S.C. 471, 478, 451 S.E.2d 924, 928 (Ct. App. 1994) (per curiam). "Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver." *Id.* Although waiver is an affirmative defense and must be specifically pled, waiver may be inferred by acts inconsistent with the known right despite the failure to specifically plead waiver.

*Id.*; *Lawrimore v. Am. Health & Life Ins. Co.*, 276 S.C. 112, 114, 276 S.E.2d 296, 297 (1981).

In this case, the circuit court relied on Penn's attendance at the mediation and Penn's expressed willingness to contribute to the settlement. We find Penn's actions at mediation inferred a waiver of its right to timely notice. *See Dreher v. S.C. Dep't of Health & Env't Control*, 412 S.C. 244, 250, 772 S.E.2d 505, 508 (2015) ("[A]n appellate court may affirm the lower court's decision for any reason appearing in the record[. T]he prevailing party may—but is not required to—raise additional sustaining grounds to support the lower court's decision."); Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").

## III. Exclusion

Penn argues the circuit court erred in finding its products hazard and completed operations hazards exclusion did not apply to bar coverage. We disagree.

On an endorsement page entitled "Exclusion," the policy states that bodily injury liability coverage does not apply to bodily injury "included within the **Completed Operations Hazard** or the **Products Hazard**." The definitions section of the policy provides as follows:

> "[C]ompleted operations hazard" includes **bodily injury** . . . arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** . . . occurs *after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured*. "Operations" include materials, parts[,] or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed[,]
> (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed[,] or

(3) when the portion of the work out of which the injury
or damage arises has been put to its intended use by any
person or organization other than another contractor or
subcontractor engaged in performing operations for a
principal as a part of the same project.

(Italics added.)

 The policy defines "products hazard" as follows:

"**[P]roducts hazard**" includes **bodily injury** . . . arising
out of the named insured's products or reliance upon a
representation or warranty made at any time with respect
thereto, but only if the **bodily injury** . . . occurs away
from premises owned by or rented to the named insured
and after physical possession of such products has been
relinquished to others.

According to Penn, the products hazard exclusion applies if (1) the bodily injury
arises out of the insured's products; (2) the bodily injury occurs away from the
insured's premises; and (3) physical possession of the products has been
relinquished.  Penn argues Rollins designated Covil as a "Product Defendant" in
his complaint; thus, only products liability claims (rather than premises liability
claims) were asserted against Covil.  Penn next argues Covil relinquished
possession of the products *as they were installed during the work* rather than at the
end of the contract at Bowater, and because Rollins alleged exposure due to "take-
home" exposure, physical possession of Covil's products must necessarily have
been relinquished.  Penn maintains the exclusion applied because the exposure to
asbestos during the policy period took place after Covil either completed its work
on the Bowater contract or after Covil relinquished possession of the products it
installed at Bowater.

Quoting Roger C. Henderson, *Insurance Protection for Products Liability and
Completed Operations−What Every Lawyer Should Know*, 50 Neb. L. Rev. 415,
441 (1971), the circuit court found "it is established that the risk insured by the
'products hazard' and the 'completed operations hazard' is 'the possibility that the
goods, products[,] or work of the insured, once relinquished or completed, will
cause bodily injury or damage to property other than the product or completed
work itself . . . .'"  The court rejected Penn's argument that Covil relinquished its
possession of its product during the relevant period.

Penn argues several cases cited by the circuit court support its arguments. The circuit court cited *Friestad v. Travelers Indemnity Co.*, 393 A.2d 1212 (Pa. Super. Ct. 1978). In *Friestad*, the court noted the following:

> Regardless of the involvement of the insured's products, so long as an accident occurs on the insured's business premises or away from his premises, but while he has the jobsite under his control, the premises operations clause obtains and coverage is afforded thereunder. It is only after he has relinquished control of a jobsite that the products hazard or completed operations hazard exclusions will operate to deny coverage.

*Id.* at 1215 n.5. In *Friestad*, the insured heating company installed a furnace, which caused a fire due to faulty installation. *Id.* at 1213. In a declaratory judgment action, the trial court entered judgment in favor of the insurer. *Id.* at 1212. The appellate court reversed, finding the trial court erred in determining the installation of the furnace "fell within the products hazard provision of the contract." *Id.* at 1217. Penn relies on language in *Friestad* that states "it is more preferable . . . to define the products hazard in terms of products liability law, and apply the exclusion *only when a product, rather than a service*, is the [c]ause in fact of damages . . . ." *Id.* (emphasis added).

Similarly, Penn argues *Heyward v. American Casualty Co.*, 129 F. Supp. 4 (E.D.S.C. 1955), also relied upon by the circuit court, supports its position because the court in *Heyward* refused to exclude coverage under a products hazard exclusion where the injuries were caused by negligent installation of a heating and plumbing unit. *Id.* at 8−9; *see also B&R Farm Servs., Inc. v. Farm Bureau Mut. Ins. Co.*, 483 N.E.2d 1076, 1077 (Ind. 1985) (finding the products hazard exclusion did not apply because the claims regarding the accidental release of fertilizer into a creek had nothing to do with a defect in a product, but instead arose due to the negligent release of the product).

We find these cases do not support Penn's argument that the products hazard exclusion applied. Covil argues the products hazard exclusion applies only when injury is caused by a defective product placed into the stream of commerce, or when injury is caused by the insured's completed work. Here, we find Covil had neither placed a product into the stream of commerce nor relinquished possession of the product while installing it at the Bowater jobsite during the policy period

when Rollins' stepfather was exposed to asbestos; thus, Penn could not establish the applicability of the products hazard exclusion.[1]

Penn also argues the exclusion applies as a completed operations hazard. Penn describes the exclusion as applying to claims (1) arising out of Covil's operations, (2) after such operations are completed, and (3) if the bodily injury occurs away from Covil's premises. Penn argues Rollins is allegedly suffering from mesothelioma arising out of Covil's installation of insulation where his stepfather worked. According to Penn, "[t]he determinative issue is whether . . . Rollins' exposure to asbestos occurred after Covil's operation[s] were completed." Penn argues a genuine issue of material fact exists, which should have precluded summary judgment, as to whether the "take-home" exposure occurred while a portion of Covil's operations had already been put to their intended use. Finally, Penn relies on *In re The Wallace & Gale Co.*, 385 F.3d 820 (4th Cir. 2004), and argues the exclusion applies if the exposure occurred during an insured's operations and continued thereafter.

In *Wallace & Gale*, the argument was made that the completed operations hazard exclusion did not apply to asbestos-related claims because the alleged bodily injury did not begin after the insured's operations ended. *Id.* at 833–34. The court stated:

> That argument, however, on its face is far broader than the district court's decision we have quoted . . . . For example, a claimant's initial exposure which occurred while Wallace & Gale was still conducting operations was not subject to any aggregate limit for policies in effect at that time even if the exposure extended beyond the operations of Wallace & Gale. Also, if exposure which began during operations continued after operations were completed, the aggregate limits of policies which came into effect after operations would apply, but, as

---

[1] Penn argues the circuit court's finding that there is no evidence indicating Covil supplied asbestos insulation to the Bowater facility during the covered period is inconsistent with the court's other findings. This argument was neither raised to the circuit court in Penn's motion for reconsideration nor ruled upon in the order denying reconsideration. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review.").

> stated, the aggregate limits would not apply to those policies in effect at the time of the exposure during Wallace & Gale's operations.

*Id.* at 834. Covil argues *Wallace & Gale* does not involve the application of policy exclusions, but concerns the inception dates of each of many policies covering the claimant's injuries and concludes if a claimant's initial exposure occurred while the insured was conducting operations, the claim would be covered without an aggregate limit of liability.

As previously noted, the circuit court found Penn provided no evidence to support the application of the completed operations exclusion. Covil's work was performed under the subcontract, which was entered into on February 26, 1986, and performed between March 11, 1986, and January 25, 1987. The policy at issue provided coverage during this period. We find because Rollins was exposed to asbestos during the period of the contract coverage, the completed operations exclusion did not apply. Because Rollins' bodily injury was not excluded under the definitions of either products hazard or completed operations, we affirm the circuit court's finding that the exclusion did not apply. *See Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008) ("An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law."); *McPherson ex rel. McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 319, 426 S.E.2d 770, 771 (1993) ("[R]ules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed. This rule of construction inures to the benefit of the insured.").

**CONCLUSION**

Based on the foregoing, the order on appeal is

**AFFIRMED.**

**GEATHERS, J., and HUFF, A.J., concur.**